## STATE OF MAINE *vs.* CUMBERLAND CLUB.

### Cumberland.   Opinion September 26, 1914.

*Common Nuisance.   Intoxicating Liquors.   Locker Room.   Place of Resort.*
*Revised Statutes, Chap. 22, Sec. 1.*

The defendant, an incorporated club, owned and maintained a club-house, in which there was a "locker room."   In the locker room were sideboards equipped with glasses and mixing utensils, and two hundred and fifty lockers. These lockers were severally owned by individual members of the club.   No one but the owner had access to a locker.   It was customary for members owning lockers to keep intoxicating liquors therein, and to drink the same in the locker room and in the dining room, when they so desired.   The locker room was most used by members of the club on week days between the hours of four and seven in the afternoon, and on Saturday evenings, during which time the average number of members present in the room was ten.   Three or four times a year the number of members present was twenty.   Ordinarily, about 140 or 150 lockers were owned and in use by members, and the lockers contained in the aggregate about 1000 bottles of intoxicating liquor, the property of the respective owners of the lockers.   Neither the club, nor any of its officers, agents or servants, participated in any way in the purchase or sale of these liquors, or in the payment therefor.   No other liquors were on the premises, and none were sold, or kept with intent to sell.   Forty per cent of the members of the club neither kept nor drank intoxicating liquors on the premises of the club:—

*Held:*

1.   That these facts constituted a statutory liquor nuisance, within the meaning of Revised Statutes, Chap. 22, Sec. 1.

2.   To constitute a "place of resort" within the meaning of Revised Statutes, Chap. 22, Sec. 1, it is not necessary that the place be open to every one.   It is enough if it be commonly and habitually resorted to by a limited class, as members of a club, or by individuals not constituting a class.

3.   A club-house is none the less a place of resort, within the meaning of Revised Statutes, Chap. 22, Sec. 1, because it is resorted to only by members of the club.

4.   A club house, where intoxicating liquors are given away, or drank by individual members of the club, and which is commonly and habitually resorted to by the members for drinking or giving away such liquors is a liquor nuisance, within the meaning of Revised Statutes, Chap. 22, Sec. 1, notwithstanding it is not unlawful to drink intoxicating liquors or to give them away.

Report on agreed statement of facts.   Case to stand for trial.

This is an indictment against defendant, found at the January Term, 1914, of the Superior Court for the County of Cumberland, which charges this respondent with the offense of keeping and maintaining a liquor nuisance, as defined in Sec. 1, of Chap. 22 of the Revised Statutes of Maine.   The case was reported on an agreed statement of facts to the Law Court, with the stipulation that if the Court determines that the facts, as set forth in the agreed statement, constitute the offense charged in the indictment, the case is to stand for trial; otherwise, respondent to be discharged.

The case is stated in the opinion.

*Samuel L. Bates*, County Attorney, for the State.

*William C. Eaton*, for respondent.

SITTING: SAVAGE, C. J., CORNISH, HALEY, HANSON, JJ.

SAVAGE, C. J.   By Revised Statutes, Chap. 22, Sec. 1, "all places of resort where intoxicating liquors are kept, sold, given away, drank or dispensed in any manner not provided by law, are common nuisances."   The defendant has been indicted for a violation of this statute.   The case has come before the court upon an agreed statement of facts, with a stipulation that if the facts therein set forth constitute the offense charged in the indictment, the case is to stand for trial; otherwise the respondent is to be discharged.

The agreed statement of facts shows, besides other things not material, that the defendant is a corporation chartered in 1878, for the purpose of establishing a club-house in the city of Portland, and of promoting literary and social intercourse among its members.   It has the power to fix and limit the right of members in and to the corporate property, and the manner in which the same shall determine.   Since 1878 the club has owned and maintained a club-house in Portland.   The club-house at the time of the alleged offense was a three story building, containing reception and reading room, dining rooms, kitchen, pantries, refrigerating room, card rooms, billiard room, sleeping rooms, etc.   The club also maintained a "locker room."   In this room were two sideboards and two hundred and fifty "lockers."   The lockers were built of practically uniform size, twelve inches high, twelve inches wide and eighteen inches deep.

These lockers were not rented, but, excepting those which were empty and unused, each had been purchased and was owned by an individual member of the Club, and would remain his property so long as he continued a member. Each locker was fitted with a lock and key, and no two keys were interchangeable, nor was there any master key nor any method of unlocking any locker except by means of the key of the owner. The two sideboards were equipped with glasses and mixing utensils. In the center of the room was a large circular table, and the room was otherwise furnished with several small tables and chairs. It was usual and customary for such members as owned lockers to keep intoxicating liquors therein, and to drink the same in this room and in the dining room, when they so desired. The locker room was most used by members of the Club on week days between the hours of four and seven in the afternoon, and on Saturday evenings, during which time the average number of members present in the room would be ten. On rare occasions, not exceeding three or four times a year, the number of members present in this room at one time would be as high as twenty.

"On the 15th day of November 1913," a time within the period covered by the indictment, "146 lockers were owned and used by members of the Club, and contained in the aggregate 1003 bottles, each bottle containing more or less intoxicating liquor. These liquors consisted of whiskey, gin, vermouth, rum, champagne, wine, beer, ale and other liquors, the property of the respective owners of the lockers. It is agreed that the condition so existing on said November 15 is a fair example of the condition there existing during all the period covered by the indictment."

"Any and all intoxicating liquor so kept and drank in the Club during the period covered by the indictment, was purchased and owned by respective members of the Club, and no officer, agent, servant or employe of the Club participated in any way in the purchase or sale of such liquor or in the payment therefor. During the period covered by the indictment there has not been in the said club-house, nor anywhere on the premises of the Club, any intoxicating liquor except such as was owned by an individual member thereof, and kept by him in his individual locker, as aforesaid, nor during said period has there been in the club-house or anywhere on the premises of the Club any intoxicating liquors sold or kept with intent to sell by any person, co-partnership or corporation whatsoever."

"During the period covered by the indictment, each member of the Club, who bought or sent intoxicating liquor to the club-house to be placed in his locker, paid to the Club a service charge of twenty five cents a bottle for spirituous liquors and four cents a bottle for beer and malt liquors. This service charge was imposed and collected as payment for ice, sugar, the use of glasses and mixing utensils and attendance of servants."

"During the period covered by the indictment, the number of resident members has been approximately one hundred and sixty; of non-resident members, ninety five; and of Army and Navy members, five; and at least forty per cent thereof, during said period, have neither kept nor drank intoxicating liquors on the premises of the Club."

"The rules and regulations adopted by the Club relative to the introduction to the club-house of non-members are rigidly and impartially enforced."

Though the house rules were made a part of the agreed statement, the court has not been furnished with a copy. But we deem them to be immaterial for present consideration. The grounds of decision will be found within a narrow compass.

Inasmuch as it is admitted that the place complained of was kept and maintained by the defendant, the only remaining questions are, whether the place was a "place of resort" within the meaning of the statute, and if so, whether intoxicating liquors were there kept, or sold, or given away, or drank, or dispensed in any manner not provided for by law. If both questions be answered in the affirmative, the offense is made out. For it cannot be doubted that it was resorted to in part for the purpose of drinking intoxicating liquors, whether it was a statutory "place of resort," or not.

The defendant contends that the club-house, in legal contemplation, was not a place of resort; for two principal reasons, first because it is not a public place, to which the public generally resorted or had a right to resort, and secondly, because the members who actually did go to the place, by virtue of their membership, essentially owned the place, that they used it as members, but did not in legal meaning resort to it; that in the language of *State* v. *Dodge*, 78 Maine, 439, "the building may be, and is *used* by the occupant or keeper. It it *resorted* to by other persons." We think neither ground is tenable.

It is unnecessary to discuss the fine distinctions suggested by counsel. In the statute, there are no such limitations upon the meaning of the phrase "place of resort" as counsel seeks to incorporate. The statute is clear and plain. It does not say "all places of public resort." It says "all places of resort." It does not say "all places of resort, except those to which admission is limited to members of the corporation keeping them." It says "all places of resort." It would be a perversion of terms to say that a club-house is not a place of resort, merely because it was resorted to only by members of the Club owning and maintaining it. What is a club? Why is a club formed and maintained but to furnish a common meeting ground to which the members may resort? Words in a statute are to be taken in their common and popular sense, unless the context shows the contrary. If a club-house is not a place of resort in the ordinary acceptation of the term, it is difficult to conceive what can be. To constitute a place of resort it is not necessary that it be open to every one. It is enough if it be resorted to by a limited class, as for instance, the members of a Club, or by certain individuals not constituting a class.

The defendant's club-house was a place of resort, not only with respect to the persons who resorted there, but also with regard to the manner and frequency of their resorting there. One well recognized definition of "place of resort"—and there are others—applies particularly well in this case, namely, a place to which persons commonly and habitually resort. *State* v. *Kapicsky*, 105 Maine, 127; *State* v. *Fogg*, 107 Maine, 177.

As to the remaining question, the case shows that the defendant's club-house was a place of resort where intoxicating liquors were kept and were drank. It was resorted to for that purpose, in part. But the defendant contends that they were not kept or drank in any such way as to bring the case within the teeth of the law. Its learned counsel argues that the phrase "in any manner not provided for by law" qualifies and limits not only the word "dispensed" which it immediately follows, but also the preceding words "kept," "sold," "given away," and "drank," and that the phrase in that connection is equivalent to "in violation of law," or "unlawfully," so that the statute should be interpreted to mean that "all places of resort where intoxicating liquors are unlawfully kept, or unlawfully sold, or unlawfully given away, or unlawfully drank, or unlawfully dispensed, are

common nuisances." And upon this premise it is argued that if the keeping, the drinking, or the giving away, etc., were lawful, the place where it is done is not a nuisance.

We think the fallacy of this argument is patent when we consider that there is no such thing as the unlawful drinking or the unlawful giving away, or the unlawful dispensing, except by sale, of intoxicating liquors. There is no statutory prohibition of drinking liquor, nor of giving it away. The qualifying phrase that is used is applicable to liquor that is kept or sold, but not to that which is drank or given away, and the statute should not be construed so as to make it applicable. It would seem that the legislature, having named certain specific conditions which would render a place of resort a nuisance, deemed it wise to add a sweeping clause to cover all contingencies, and to say that all places of resort where intoxicating liquors are "dispensed in any manner not provided for by law" are nuisances. By this construction the statute is rendered harmonious and effective. It is in harmony also with what may be supposed to be the purpose of the statute or one of its purposes. *State* v. *Kapicsky,* supra.

The evils which it seems this statute seeks to remedy are not those of merely drinking or giving away intoxicating liquors. They are rather the evils which may follow from drinking or giving away liquors at a place of resort, to which men commonly and habitually resort, where men socially inclined are apt to congregate for that purpose. If each member of this Club drank his own liquor and only his own, the club-house would still be a place of resort where intoxicating liquor was drank. But the universal conduct of men under such circumstances goes to show that ordinarily drinking at such a place is not so limited.

The court are of opinion that the facts agreed upon describe a statutory nuisance.

In accordance with the stipulation,

*Case to stand for trial.*