## Lance License

*Louis A. Fine,* for plaintiffs.

*Paul R. Selecky,* Special Deputy Attorney General, for Pennsylvania Liquor Control Board.

LITTLE, P. J., April 14, 1952.—This is an appeal by Stella and Richard Lance from the order of the Pennsylvania Liquor Control Board dated April 27, 1951, refusing their application for a restaurant liquor license and amusement permit for a resort area.

The board assigned two reasons: (1) That under the terms of the act of assembly the quota for Herrick Township is one license and such license has been secured and is now in effect; (2) that the establishment for which license was requested is not in a resort area and, therefore, refused the application for restaurant liquor license and amusement permit applied for by Philip Skotz, Stella and Richard A. Lance for premises located in Herrick Township, Susquehanna County.

The name Philip Skotz does not appear in the present appeal.

The Pennsylvania Liquor Control Board has the power to increase the number of licenses in any municipality which, in the opinion of the board, is located within a resort area. See Act of June 24, 1939, P. L. 806, sec. 3; Liquor Code of April 12, 1951, P. L. 90, sec. 461(b). The above acts are deemed to be the exercise of the Commonwealth's police power for the protection of public welfare, the health, peace and morals of the people of this Commonwealth and to prohibit forever the open saloon. It was provided that all of the provisions and every section of the acts should be liberally construed for the accomplishment of these purposes. See 47 PS §1-104.

The intent of the legislature was well stated by the Superior Court in Commonwealth v. Bienkowski, 137 Pa. Superior Ct. 474, where it was held that the purpose of the Liquor Control Act is to control the sale of liquor, to regulate and restrain the sale of liquor, and not to promote the sale of it.

The control board is vested with discretion in determining whether more licenses than the number allowed by the quota under the Acts of 1939 and 1951 should be issued in a resort area.

Courts should not be astute to find an abuse of this discretion. It is our mission to determine whether there was an abuse of discretion and, if so, correct it; it is neither our privilege nor our right to supplant the board's discretion with our own.

In Dauphin County Grand Jury Investigation Proceedings (No. 3), 332 Pa. 358, 364, "discretion" is aptly defined as follows:

"In our own state it was said as long ago as Paschall v. Passmore, 15 Pa. 295, 304: 'The very term (discretion) itself, standing alone and unsupported by cir-

cumstances, imports the exercise of judgment, wisdom, and skill, as contradistinguished from unthinking folly, heady violence, and rash injustice. When technically employed in legal instruments, its proper acceptation is inseparable from the idea of dispassionate conclusion, having due regard to the rights and interests of others'. . . ."

It is the latitude or extent within which a court, or an officer clothed with it, may render a decision based upon circumstances established in any particular case according to his best judgment rather than one that accords with some fixed or established rule of law.

It has not been seriously contended that the quota under the Acts of 1939 and 1951 permits of more than one license for Herrick Township, in fact, it could not be, since there are less than 500 permanent residents. Appellants rest their case on the fact that Herrick Township is a resort area, that there is a necessity for the license and that the board's refusal constituted an "arbitrary and capricious exercise of the board's discretion."

A "place of resort" is defined in State v. Cumberland Club, 112 Me. 196, 91 Atl. 911, wherein at page 200, it is said:

"One well-recognized definition of 'place of resort' —and there are others—applies particularly well in this case, namely, a place to which persons commonly and habitually resort."

It is a place of frequent assembly, a haunt, for the entertainment of others than the inhabitants. We think a "resort area" is one where people go for entertainment, relaxation and rest, where accommodations and means of amusement are maintained.

To accord with the intent of the legislature in adopting the provisions of the related statutes with reference to "resort area" we would define a "resort area" to be an area set aside for entertainment, rest and

relaxation, and for a like definition see License of Brindle, 32 Erie 281, 282 (1950). Where there are facilities of this nature to a limited extent, the area does not thereby become a resort area.

It appears from the evidence that appellants own a neat, well-equipped restaurant amid pleasant surroundings at Lowe Lake in Herrick Township. Fiddle and Lewis Lake are not far away and all three are largely surrounded by cottages or cottage lots. There is a ski tow on Elk Mountain about three and one-half miles from plaintiff's property. Lewis Lake is distant about two miles and Fiddle Lake about four. There is ice skating in the winter and hunting through the game seasons in this area. At times when snow conditions are favorable the ski tow on Elk Mountain is in operation.

Several of applicants' witnesses testified that appellants' property, in their opinion, was situated in a resort area. With this we cannot agree. The presence of cottages around several lakes and a ski tow several miles away, with a restaurant and cabins located at one of the lakes does not change a well known dairying and farming area into a resort area. The cottages are maintained for the use of the owners, the ski tow is for ski enthusiasts and their followers and is seasonal; hunting, fishing, swimming and ice skating prevail on or about all of the lakes in Susquehanna County; we can find no evidence sufficient to convince us that there is any greater indulgence in those sports in this area than in any other part of the county where lakes abound. Plaintiffs' claim, that many people visit the cottage owners over the week-end as guests, would not constitute the territory a resort area. The Liquor Control Board's determination that Herrick Township is not a resort area was not an abuse of discretion.

Appellants allege that the action of the Liquor Control Board in concluding from the bare fact that the

quota had been filled, that there are sufficient licenses and for that reason to hold that applicants are not entitled to a license, was an arbitrary and capricious exercise of the board's discretion.

The board in a reasonable use of its discretion had found that there is no necessity for an additional license. Having so determined after proper investigation the board had not the power to grant the requested license. The test to be applied is not whether it would be convenient and, pleasant to have another license but whether those license holders at present in the business are adequately equipped to supply the demand of those living in, and those frequenting the area in question.

Appellants on the witness stand expressed the opinion that there was a need for another license. Of the witnesses called by appellants, Orville Romick testified that probably 400 to 700 people come week-ends during the summer to Lowe Lake where he has a cottage. As to the necessity for another license, he said: "I would say probably there is a need of a restaurant, but a liquor license, it is hard to say just what need there ever is for a liquor license . . . I am at a loss what to say; however, I think I will say there is a need for a restaurant liquor license."

John Gamola, called by appellants, testified as follows:

"By Mr. Fine: Q. I understand it is a convenience, a help and a need as far as you and your friends are concerned to use the Lance place of business as a restaurant and also if they would obtain a liquor license, right?

"A. Right.

"Q. What I am interested in, tell us whether or not it would not help the community generally and it would be a help to them aside from you and your friends?

"A. It would be a help.

"By Mr. Selecky: Q. It would be a help but is there an absolute need for it?

"A. That's the $64 question. That's up to the judge."

Appellant's witness Lena Pauletti, a cottage owner, testified on direct examination.

"Q. Do you feel there is a need for a restaurant liquor license in that area?

"A. Yes."

Appellants called Lester Skalanka, who lives in Herrick Township. He testified as follows on direct examination:

"Q. It is developing into a resort area and people do not want to drive too far, do they?

"A. I think it would be alright if they had a liquor and beer license.

"Q. You would have no objection?

"A. No. . . .

"Q. Would it be a help in general to the public in that area?

"A. I would say yes."

Ambrose Zalinsky, a native of that area for over 40 years, testified:

"Q. Do you feel there is a need in your opinion, from the time you have lived there, a need for a restaurant liquor license on the premises where the Lances now reside?

"A. We could do with one."

Andrew Swez, one of the neighboring farmers about three miles distant from appellants' place of business, testified concerning activities in the area but expressed no opinion as to the necessity for an additional license. John Swez, his brother, also called by appellant, was likewise not questioned concerning the need or necessity for an additional license.

In rebuttal the board called George Giles, assessor, who testified with reference to the Lowe Lake area:

"Q. How many cottages there, do you know?

"A. I don't think there is more than 30 all finished. Some are under construction. . . .

"Q. The rest of Herrick Township is what?

"A. Farming section.

"Q. Have you noticed any particular building going on in the rest of the township besides Lowe Lake?

"A. There has been some, but not a great lot."

Rev. Fay Crossman testified that he counted 30 cottages at Lowe Lake constructed or under construction. This witness testified further:

"Q. In your opinion is there a need for this restaurant to have a liquor license?

"A. No. . . .

"Q. In your opinion the Zembrzycki, Demanich and the Beacon at Uniondale are sufficient to fulfill the needs of the public in Lake Lowe area?

"A. I do."

After objection:

"By the court: Q. Are they adequately served without mentioning any place as to their need of intoxicating beverage?

"A. Yes. . . .

"Q. From your proximity to Zembrycki's you normally know its condition there, as to whether they are overcrowded and whether they have turned any business away?

"A. Never have."

Among others the board called Lottie Zembrzycki, wife of Bruno Zembrzycki, license holder in Herrick Township, who testified as follows:

"Q. Able to handle more business?

"A. Yes, two or three times as much.

"Q. Able to handle more business on Saturday night?

"A. Yes.

"Q. Ever crowded on Saturday night?

"A. Yes.

"Q. Ever chase any away because you could not handle them?

"A. No.

"Q. Able to handle the present influx of people that come to the cottages at Lowe Lake if they come to your place?

"A. We are."

On cross examination:

"Q. Generally the records indicate an increase in your business?

"A. For the last year, no. Not for the last year."

Bruno Zembrzycki, on direct examination:

"Q. Can you handle more business?

"A. Yes.

"Q. How many times more?

"A. Six.

"Q. How many times more than the present volume?

"A. Two or three times more, some times we haven't enough."

From the above it would appear that a license would be a convenience to the people around Lowe Lake and advantageous to appellants. There is no substantive evidence of necessity or need, consequently the Liquor Control Board's action in refusing the license on the ground of lack of proof of need or necessity was not an arbitrary or capricious abuse of discretion. We cannot say that it indicates unthinking folly, heady violence, careless or rash injustice. We are in accord with the board's decision and find:

1. The quota of retail licenses for Herrick is one, and one license which counts against the quota has already been granted by the board.

2. That appellant's place of business is not located within a resort area.

3. There is no present need for an additional licensed establishment in Herrick Township because the licensed establishment now in existence is sufficient to

serve the needs of the people there residing as well as those coming in from outside.

*Order*

Now, to wit, April 14, 1952, appeal is dismissed and the order of the Pennsylvania Liquor Control Board is sustained; costs to be paid by appellants.