STATE OF MAINE *vs.* J. P. BASS PUBLISHING COMPANY.

Penobscot.    Opinion July 15, 1908.

*Penal Statutes.    Construction of Same.    Advertisements of Intoxicating Liquors*
*Kept for Sale Without the State.    Statute Prohibits Such Advertisements.*
*Police Power of State.    U. S. Constitution, Article 1, section VIII,*
*paragraph 3.    U. S. Statute, 1901, " Wilson Act."    Revised*
*Statutes, chapter 29, sections 14, 45.*

1.  If a penal statute is equally susceptible of two interpretations, that
should be adopted which gives the statute the effect evidently intended by
the legislature.

2.  The statute R. S., chapter 29, section 45, forbidding the publication of
advertisements of the sale or keeping for sale of intoxicating liquors
includes advertisements of intoxicating liquors sold or kept for sale without
the State.

3.  By the Act of Congress known as the " Wilson Act," intoxicating liquors
are to a great extent withdrawn from the protection of the Commerce
Clause of the United States Constitution and made subject to the police
powers of the States.    Since the Act, a State in the exercise of its police
power may lawfully prohibit the advertising within the State of intoxicat-
ing liquors sold or kept for sale without the State.

On agreed statement.    Judgment for the State.

Complaint to the Bangor Municipal Court in the City of Bangor,
for an alleged violation of the provisions of Revised Statutes,
chapter 29, section 45, and which said section reads as follows:

"Whoever advertises or gives notice of the sale or keeping for
sale of intoxicating liquors, or knowingly publishes any newspaper
in which such notices are given, shall be fined for such offense the
sum of twenty dollars and costs, to be recovered by complaint.
One-half of said fine shall be paid to the complainant and one-half
to the town in which said notice is published."

The body of the complaint is as follows:    "Henry N. Pringle of
Waterville in the County of Kennebec, on the seventeenth day of
September, A. D. one thousand nine hundred and six in behalf of
said State, on oath, complains that the J. P. Bass Publishing Co.,
a corporation organized under the laws of Maine and doing business

in said Bangor, in the County of Penobscot, is the owner and publisher of a certain newspaper called the Bangor Daily Commercial, printed and published in said Bangor, that Joseph P. Bass, M. Robert Harrigan, and Frederick H. Strickland all of said Bangor, are the owners of all the stock of said corporation and were the officers and directors thereof on the tenth day of August, A. D. one thousand nine hundred and six and the said Joseph P. Bass, M. Robert Harrigan and Frederick H. Strickland as such officers and directors did unlawfully and knowingly cause said newspaper to be printed and published in said Bangor, on the tenth day of August, A. D. one thousand nine hundred and six, in which said newspaper on said tenth day of said August a certain notice, or advertisement of the sale and keeping for sale of intoxicating liquors was printed and published in the words and tenor following, to wit: (Here follows a facsimile of the liquor advertisement of Chas. Gallagher & Co., of Boston, Mass. printed in the said Bangor Daily Commercial August 10, 1906, stating, among other things, "Send us $3.00 and we will ship you in a plain sealed case, express prepaid, with no marks to show contents, four full quarts of Gilbert Club Pure Rye Whiskey. Put it to the test and if not satisfied, send it back. We will stand the expense—none whatever to you— and your money cheerfully refunded.") against the peace of said State, and contrary to the form of the Statute in such case made and provided.

"Wherefore, the said Pringle prays that the said Bass, Harrigan and Strickland may be apprehended and held to answer to this complaint, and dealt with relative to the same, as law and justice may require."

On this complaint a warrant in due form of law was issued by said Municipal Court, and the defendants were duly arraigned in said Municipal Court where they pleaded not guilty, and waived a hearing, and thereupon the Judge of said Municipal Court adjudged them guilty and imposed a fine of twenty dollars and costs on each defendant, from which judgment an appeal was taken by all the defendants to the February term, 1907, of the Supreme Judicial Court, Penobscot County.

At said February term of said Supreme Judicial Court, an agreed statement of facts was filed and the case was then reported to the Law Court with the following stipulation : "Judgment to be rendered by the Law Court as the facts and the law of the case may require."

The agreed statement of facts is as follows :

" It is agreed that at the time of said alleged offense said newspaper, the Bangor Daily Commercial, including the plant, consisting of printing presses, boiler, engine, lineotype machines, cases, type, paper and printing appliances was owned and that said newspaper was published by the ' J. P. Bass Publishing Company,' ·a corporation duly organized and existing under the laws of this State, and having a capital stock fully paid in of Forty Thousand Dollars ($40,000) and that said capital stock is and was all owned at the time of the commission of the alleged offense by the respondents above named, to wit : the 10th day of August A. D. 1906, and that the notice of the sale or keeping for sale of intoxicating liquors above named and as described in the complaint and warrant was published with the knowledge of and by the direction of the said Bass, Strickland and Harrigan.

" It is further agreed that Chas. Gallagher & Co. whose advertisement was alleged to have been published in the Bangor Daily Commercial, carried on business in the Commonwealth of Massachusetts and was legally authorized under the laws of said Commonwealth to sell and keep for sale intoxicating liquors.

" It is further agreed that said advertisement was published in said Bangor Daily Commercial in pursuance of a contract made and entered into in Boston aforesaid through the advertising agency of Julius Matthews between the said Gallagher & Co. and the said Julius Matthews, acting on behalf of and as agent of said J. P. Bass Publishing Company."

NOTE.    April 28, 1905, proceedings were instituted against the same personal defendants as in this case, for an alleged violation of the provisions of the aforesaid section 45, and that case was also reported to the Law Court.  See *State* v. *Bass* et als., 101 Maine, 481.

The case appears in the opinion.

*H. H. Patten*, County Attorney, for the State.

*F. H. Appleton, and Hugh R. Chaplin*, for defendants.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, PEABODY, SPEAR, CORNISH, JJ.

EMERY, C. J.   Chap. 29 of the Revised Statutes, popularly known as the "Prohibitory Law," contains in sec. 45 the following prohibition :   "Whoever advertises or gives notice of the sale or keeping for sale of intoxicating liquors, or knowingly publishes any newspaper in which such notices are given, shall be fined for such offense the sum of twenty dollars and costs to be recovered by complaint."

The defendants knowingly published, Aug. 10, 1906, at Bangor in Penobscot County, a newspaper, the Bangor Daily Commercial, in which was given a notice and advertisement that intoxicating liquors were sold and kept for sale at 297 Congress St. in Boston, Massachusetts, by Chas. Gallagher & Co. who were then carrying on business in Massachusetts and were legally authorized under the laws of that Commonwealth to sell and keep for sale intoxicating liquors.   Their advertisement in question was published in the Bangor Daily Commercial in pursuance of a contract made in Boston, Massachusetts, between them and an advertising agency there acting as the agent of the defendants.

The defendants claim that their act of publishing the advertisement was lawful upon two grounds ; 1st that the statute is susceptible of the construction that it only prohibits notices or advertisements of liquors for sale or kept for sale within this State, and being a penal statute should therefore receive this strict construction,— 2nd that if it should be construed as prohibiting notices or advertisements of liquors for sale or kept for sale in another State where such sale and keeping for sale are lawful, as in this case, then so construed the statute is so far nullified by that clause of the Constitution of the United States, known as the commerce clause, which

confers upon Congress the power "To regulate Commerce with foreign nations and among the several States and with the Indian Tribes." U. S. Const., Art. 1, Sec. VIII, par. 3.

I. In construing the statute, penal though it be, the intent and object of the legislature in enacting it are to be ascertained and given effect if the language be fairly susceptible of such a construction. As said by the Massachusetts Court per Shaw, C. J., in a criminal case *Com.* v. *Kimball*, 24 Pick. 366, at page 370, "It is unquestionably a well settled rule of construction, applicable as well to penal statutes as to others, that when the words are not precise and clear, such construction will be adopted as shall appear most reasonable and best suited to accomplish the objects of the statute." In a criminal case *U. S.* v. *Hartwell*, 6 Wall. 385, the court, page 396, said of the penal statute there in question, "The proper course in all cases is to adopt that sense of the words which best harmonizes with the context and promotes in the fullest manner the policy and objects of the legislature. The rule of strict construction is not violated by permitting words to have their full meaning, or the more extended of two meanings, as the wider popular, instead of the more narrow technical one; but the words shall be taken in such a sense, bent neither one way nor the other, as will best manifest the legislative intent."

The statute in this case is but a part of the legislation of this State upon the subject matter of the sale and keeping for sale of intoxicating liquors and is to be construed, so far as its language will fairly and reasonably allow, in harmony with what appears from that legislation to be the legislative policy and purpose. The selling and keeping for sale of intoxicating liquors are in themselves harmless acts. If the people purchasing such liquors used them only "for medicinal, mechanical and manufacturing purposes," no harm would result to the people of the State; and the sale and keeping for sale of intoxicating liquors for such purposes are provided for in sec. 14 of chap. 29. It is common knowledge that it is the use of intoxicating liquors as a beverage that is deemed harmful and is the mischief sought to be prevented by the legislation. The prohibition of the sale and keeping for sale of intoxicating liquors is only a

means. The end sought for is the prevention, or at least the diminution of the drinking of intoxicating liquors by the people of the State. The legislation upon the subject, including the statute in question, should be construed to further that end so far as the language, without bending either way, fairly allows.

The language of the statute (sec. 45) is comprehensive. There are in it no words limiting the prohibition to notices, or advertisements of liquors kept for sale or to be sold within this State. Read in connection with the other legislation, its evident purpose is to further the ulterior purpose of all that legislation, viz., to diminish the use of intoxicating liquors as a beverage. To effect that purpose it must be construed as prohibiting notices and advertisements of liquors for sale or kept for sale without the State as well as within, and we think the language fully permits, if it does not require, such a construction, and we accordingly accept it as the true construction.

We are not unmindful of the rule that penal statutes are to be construed strictly. "But though penal laws are to be construed strictly, yet the intention of the legislature must govern in the construction of penal as well as other statutes, and they are not to be construed so strictly as to defeat the will of the legislature." *U. S.* v. *Lacher,* 134 U. S. 632, at page 642. In *U. S.* v. *Winn,* 3 Summer, 209, the statute provided a punishment if "any master or other officer" without justifiable cause imprisoned "any one or more of the crew" etc. The master was indicted for imprisoning the "Chief Officer." It was held that to further the purpose of the statute, the word "crew" should be held to include the "Chief Officer," though the rule of strict construction alone might exclude· him. So in *U. S.* v. *Moulton,* 5 Mason, on 537, gold coin was held to be included in the term "personal goods" in a penal statute, though the rule of strict construction might exclude it. We think further illustration or authority unnecessary.

II. As to the second ground of defense it may be conceded that but for the Act of Congress known as the "Wilson Act," U. S. Comp. Stat. 1901, page 3177, the State statute as above construed would be in conflict with the commerce clause of the United States

Constitution. The Wilson Act, however, goes far to remove intoxicating liquors from the protection of that clause and to give full effect to State legislation concerning them. Decisions of United States Courts upon the subject, made prior to the passage of that Act are now inapplicable and need not be considered. Since the Wilson Act, the State may prevent the sale within its limits of intoxicating liquors in the original package, and to that end may seize them in such packages the moment they are delivered. Also, to further the welfare of its people, the State may now prohibit the solicitation within the State of orders for the purchase of liquors without the State. This seems to be settled by the recent decision of the United States Supreme Court in *Delamater* v. *South Dakota*, 205 U. S. 93. Delamater, a salesman for a firm of liquor dealers in Minnesota, carried on the business in South Dakota of soliciting orders from residents of that State for the purchase of intoxicating liquors from his firm in Minnesota. The law of South Dakota imposed an annual license charge upon "the business of selling or offering for sale" intoxicating liquors within the State. The statute was admittedly a police regulation and not a revenue measure. Delamater did not offer to make sale of intoxicating liquors within the State. He merely solicited orders for liquors to be sold in Minnesota and shipped from there to the purchaser at his risk. Being prosecuted for not paying the license fee, he set up in defense the commerce clause of the U. S. Constitution. The United States Supreme Court, following the decision of the Supreme Court of South Dakota, held the State statute constitutional on the ground that the Wilson Act authorizes a State to restrain persons from soliciting within its territory orders for the purchase of intoxicating liquors in another State to be shipped to the purchaser in his State.

Under that decision neither the Boston firm of Chas. Gallagher & Co. nor any agent for them can within the territory of this State solicit orders for the purchase of intoxicating liquors in Massachusetts to be shipped to the purchaser in Maine, if our statutes forbid. Since advertising is really soliciting, it would seem to follow that they cannot lawfully advertise in this State such liquors for sale in Massachusetts and that the publishers of newspapers

within this State cannot lawfully publish such advertisement in the face of the State statute expressly forbidding it. It may be noted that in the advertisement in this case, the advertisers say to the reader, " Send us $3.00 and we will ship you in a plain sealed case prepaid, with no marks to show contents, four full quarts of Gilbert Club Pure Rye Whiskey." The advertisement was in a Maine newspaper and plainly was for orders for intoxicating liquors to be shipped to the purchaser in Maine. The case would therefore seem to be well within the rule of the decision in the case cited.

For answer to the able argument and citations of the defendants' counsel we refer them and the profession to the opinion of the court in the Delamater case above cited, 205 U. S. 93. The Supreme Court in that case did not hold, nor do we hold in this case, that an inhabitant of a State where the sale of intoxicating liquors is prohibited may not purchase intoxicating liquors in another State and bring them into his own State for any lawful use, but we understand that court to hold, and hence we hold, that a State may prohibit an inhabitant of another State making in this State a contract for, or soliciting orders for, the sale of intoxicating liquors in any State. The question is fully discussed in the opinion with illustrations drawn from some State insurance statutes. While a State cannot prevent one of its citizens from making a contract of insurance in another State, it may forbid the making, within its own borders, insurance contracts by foreign companies or their agents. *Hooper* v. *California*, 155 U. S. 648; *Commonwealth* v. *Nutting*, 175 Mass. 154, 183 U. S. 553. The court then goes on to say, " The ruling thus made is particularly pertinent to the subject of intoxicating liquors and the power of the State in respect thereto. As we have seen, the right of the States to prohibit the sale of liquor within their respective jurisdictions in and by virtue of the regulation of commerce embodied in the Wilson Act is absolutely applicable to liquor shipped from one State into another, after delivery, and before the sale in the original package. It follows that the authority of the States, so far as the sale of intoxicating liquors within their borders is concerned, is just as complete

as is their right to regulate within their jurisdiction the making of contracts of insurance.  It hence must be that the authority of the States to forbid agents of non-resident liquor dealers from coming within their borders to solicit contracts for the purchase of intoxicating liquors, liquors which otherwise the citizen of the State would not have thought of making must be as complete and efficacious as is such authority in relation to contracts of insurance, especially in view of the conceptions of public order and social well-being which it may be assumed lie at the foundation of regulations concerning the traffic in liquor."

The defendants' counsel urged upon us the language of this court in its opinion in the case *Corbin* v. *Houlehan*, 100 Maine, 246. The decision in that case, however, sustained the State statute as not in conflict with any provision of the United States Constitution.  So far as the opinion discussed the question here involved it must be regarded as dicta only.  The question is a federal question, the decision of which rests finally with the United States Supreme Court. In view of the decision of that court and the reasons stated therefor in the case cited *Delamater* v. *South Dakota*, 205 U. S. 93, whatever may have been said in the opinion in *Corbin* v. *Houlehan*, we must now hold that the statute in question (sec. 45) at the time of its violation by the defendants in 1906 was not ·in conflict with the State or United States constitution, but was valid and operative upon the defendants.

The defendants further urge that newspapers and magazines published in other States, and containing advertisements of intoxicating liquors for sale, come into this State by mail and otherwise in large quantities, and yet cannot be interfered with by the State authorities.  That may be, but it does not follow that the State may not prevent such advertisements being printed in newspapers published in this State.  If the State cannot wholly prevent the mischief of such advertisements by excluding from the State all newspapers containing them wherever published, it may yet prevent such increase and spread of the mischief as would result from such advertisements being printed in newspapers published within the State.  It may to that extent control the conduct of printers and

publishers within its own territory.    Such we understand to be the logical result of the decision and reasoning in the Delamater case by the court of last resort upon such questions.

It follows that the State must have judgment.

*Judgment for the State.*