STATE of Maine

v.

Augustus F. HEALD, Jr.

Supreme Judicial Court of Maine.

Jan. 3, 1978.

Robert Raymond (orally), Vernon I. Arey, Asst. Attys. Gen., Augusta, for plaintiff.

Marshall A. Stern (orally), Vafiades, Brountas & Kominsky by Eugene C. Coughlin, Bangor, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK and ARCHIBALD, JJ.

DUFRESNE, Active Retired Justice.[1]

Tried on an indictment charging him with the offense of possession of a firearm by a felon in violation of 15 M.R.S.A., § 393,[2] the defendant, Augustus F. Heald, Jr., was found guilty as charged by jury verdict in the Superior Court, Piscataquis County, on November 1, 1973. The State then moved for immediate trial of the defendant as a person previously convicted and sentenced to the Maine State Prison pursuant to 15 M.R.S.A., § 1742[3] under a separate indictment found by the Piscataquis County grand jury at the same time as the first mentioned indictment was rendered. On the same day, November 1, 1973, the defendant was arraigned on the second indictment and a new jury was impaneled. On November 2, 1973, this second jury found the defendant in violation of 15 M.R.S.A., § 1742, commonly known as the habitual offender statute, and the presiding Justice, as provided by section 1742, sentenced the defendant on the possession-of-a-firearm-by-a-felon conviction to a term in the Maine State Prison of not less than 10 years and not more than 30 years. The defendant appeals. We deny his appeal.

---

1. Mr. Justice Dufresne sat at argument and participated in consultation while he was Chief Justice, and, on order of his successor, Mr. Chief Justice McKusick, was empowered and authorized to continue his participation in the case in his capacity of Active Retired Justice.

2. 15 M.R.S.A., § 393 provides in pertinent part:
"It shall be unlawful for any person who has been convicted of a felony under the laws of the United States or of the State of Maine, or of any other state, to have in his possession any pistol, revolver or any other firearm capable of being concealed upon the person until the expiration of 5 years from the date of his discharge or release from prison or termination of probation.
\* \* \* \* \* \*
Anyone violating any of the provisions of this chapter shall be guilty of a felony, and upon conviction thereof, shall be punished by imprisonment for not less than one nor more than 5 years."

3. 15 M.R.S.A., § 1742
"When a person is convicted of a crime punishable by imprisonment in the State Prison, and it is alleged and proved in a trial, or admitted in a trial, that he had been before convicted and sentenced to any state prison by any court of this State, or of any other state, or of the United States, unless pardoned therefore, he may be punished by imprisonment in the State Prison for any term of years. Allegation of such prior conviction and sentence shall be by indictment separately found, and upon which the defendant shall not be arraigned until after such time as he shall have been convicted upon the current principal offense."

The record supports the following narrative: On June 17, 1965 the defendant was convicted of manslaughter in Waldo County Superior Court and sentenced to the Maine State Prison. Though initially denied on July 28, 1967 (see *State v. Heald*, Me., 232 A.2d 79), Heald's appeal from this conviction was later reinstated and was still pending on February 16, 1970, the date he is accused of violating 15 M.R.S.A., § 393, the unlawful-possession-of-a-firearm-by-a-felon statute. On that date the defendant, who had been released from State Prison pending resolution of his reinstated appeal, was arrested in Guilford, Maine, by Piscataquis County Deputy Sheriff Paul Ruksznis in the course of a criminal investigation. When he was about to handcuff the defendant, the deputy noticed the butt of a gun protruding from the pocket of the jacket Heald was wearing. The officer removed the gun which later proved to be a small .32 caliber revolver.

At trial the prior conviction of manslaughter was used as evidence to establish both the defendant's status as a felon at the time the handgun was seized from his person and his status as an habitual offender once convicted of the current offense.

### Conviction of a felony within the scope of 15 M.R.S.A., § 393

The defendant, prior to trial, filed a motion to dismiss the indictment charging him with the crime of possession of a firearm by a felon pursuant to Rule 12(b)(1), M.R. Crim.P.,[4] on the ground that the manslaughter conviction upon which the State relied to establish the defendant's status as a felon on February 16, 1970 was then pending on appeal to the Law Court. The trial Court's denial of the motion was proper.

The issue is whether the Legislature used the expression "convicted of a felony" to mean an initial unreversed conviction at the trial level, whether appealed or not, or only such convictions as have become finalized

either through the appeal process or for failure of a defendant to exercise the right of appeal.

█ It is a well recognized principle of statutory construction that penal statutes are to be construed strictly. *State v. Granville*, Me., 336 A.2d 861 (1975); *Duncan v. State*, 158 Me. 265, 183 A.2d 209 (1962), cert. den., 371 U.S. 867, 83 S.Ct. 129, 9 L.Ed.2d 104.

This rule, however, is subject to the overriding controlling principle that, even in the interpretation of penal statutes, the standard used to determine their meaning must not be so restrictive as to defeat the obvious will of the Legislature; rather, the legislative language will be construed to have such meaning as shall appear most reasonable and best suited to accomplish the objects of the legislation. *State v. S. S. Kresge, Inc.*, Me., 364 A.2d 868, 871 (1976); *Davis v. State*, Me., 306 A.2d 127 (1973).

Furthermore, legislative intent will be ascertained by giving the statutory language that reasonable construction which persons of "common intelligence would readily ascribe" thereto. *State v. Shaw*, Me., 343 A.2d 210, 213 (1975).

█ Words of a penal statute must be given their common and popular sense, unless the act discloses a legislative intent otherwise. *State v. Blaisdell*, 118 Me. 13, 15, 105 A. 359 (1919); *State v. Cumberland Club*, 112 Me. 196, 200, 91 A. 911 (1914).

█ Giving legislative terms such as in the instant case—convicted of a felony—the more extended of two meanings as the general public would understand it (conviction at the trial level), instead of imputing to them the more sophisticated and narrow technical reference to a conviction finalized in an appeal or by the failure of a defendant to take an appeal, is a proper approach to determining legislative intent. See *State v. J. P. Bass Co.*, 104 Me. 288, 292, 71 A. 894, 20 L.R.A., N.S., 495 (1908); *United States v.*

---

4. Rule 12(b)(1). Defenses and Objections Which May Be Raised.

"Any defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion."

*Hartwell*, 6 Wall. 385, 396, 18 L.Ed. 830 (1867).

■ This Court has recognized that the words "convicted" or "conviction" when they appear in a criminal statute may have different meanings depending upon the context of the particular statute in which they are used. *State v. DeBery*, 150 Me. 28, 30, 103 A.2d 523 (1954); *Donnell v. Board of Registration*, 128 Me. 523, 524–525, 149 A. 153 (1930).

In its common and popular sense, the term "convicted" signifies the finding of the jury that the defendant is guilty. We speak generally of *convictions* being reversed on appeal and commonly refer to individuals being convicted by juries of their peers. In *Duncan, Petr. v. State of Maine*, 158 Me. 265, 271, 183 A.2d 209, 213 (1962), this Court said that *ordinarily* the "conviction" is the verdict of guilty. See also *State v. Morrill*, 105 Me. 207, 73 A. 1091 (1909).

In *State v. Dunn*, Me., 370 A.2d 1099 (1977), this Court ruled that a prior conviction from which an appeal was pending may be shown to affect the credibility of a witness, since the intendment of 16 M.R. S.A., § 56 is that the word "convicted" must be given its normal meaning. In *Dunn*, we distinguished the *Donnell* and *DeBery* cases, where the Court construed the pertinent statutes to require a final conviction as to which nothing remained to be done except execution of the sentence. The Court in *Donnell* and *DeBery* ruled that such was the intent of the Legislature where serious economic rights such as the license to practice medicine and the license to operate motor vehicles were involved.

In the instant case, the Legislature provided against any serious economic consequences similar to those involved in *Donnell* and *DeBery* by excluding commissioned peace officers, guards and watchmen from the class of persons against whom the firearm-possession prohibition of section 393 would apply. See 15 M.R.S.A., § 392. If the Legislature had intended to exclude

persons whose conviction had not become final, it seems that a parallel exception would have been enacted.

■ It would appear that the Legislature viewed firearms concealable on the person as tools of the trade in the criminal world. It must have considered their possession by persons found guilty of serious crimes as presenting a high potential of danger to the public generally and as enhancing to a high degree the probability that the convicted individual would continue his criminal activity. The Legislature could justifiably conclude there was need for gun control legislation in the case of convicted criminals the moment the person has been found guilty of a serious crime; to except from the operation of 15 M.R.S.A., § 393 felons whose judgment of conviction is pending on appeal would be inconsistent with the obvious legislative purpose of deterrence and rehabilitation which the broad language of the enactment indicates. See *State v. Brown*, 6 Or.App. 523, 488 P.2d 856 (1971).

The federal courts have reached a similar conclusion in their interpretation of 18 U.S. C.App. § 1202(a)(1). That statute forbids the interstate transportation of firearms by a felon. By reasoning that Congress intended the words of the statute to carry their normal meaning, the circuit courts have consistently held that the term "convicted" denotes the verdict of guilty at the trial level. *United States v. Samson*, 533 F.2d 721 (1st Cir. 1976); *United States v. Wooten*, 503 F.2d 65 (4th Cir. 1974). See also *United States v. Liles*, 432 F.2d 18 (9th Cir. 1970).

### *Sufficiency of firearm-possession indictment*

■ In his motion to dismiss, the defendant further raised the point, that, even if the manslaughter conviction could serve as a basis for a prosecution under 15 M.R. S.A., § 393, the stated conviction was not alleged with sufficient particularity to make the indictment valid in law.[5]

---

5. The reference indictment in material part reads as follows:

"That, on the sixteenth day of February, 1970, in the Town of Guilford, County of Pisca-

In *State v. Mottram*, 155 Me. 394, 156 A.2d 383 (1959), this Court was called upon to decide, whether the trial court acted properly in allowing an amendment to an indictment for possession of a firearm by a felon. What was said there, though in a somewhat different context, is, nevertheless, relevant here:

"The count of prior conviction must, by allegation, notify the respondent that he is charged with a previous conviction of a felony and sentenced thereon to a State Prison. In order to properly prepare his defense, he is entitled to that degree of strictness in description of the record that will inform him of the particular record to be used as evidence." 155 Me. at 402, 156 A.2d at 388.

Thus, the standard to be used in determining the sufficiency of an indictment in relation to its allegations concerning the previous conviction pursuant to 15 M.R.S.A., § 393 is, whether it contains sufficient information as will permit the defendant to identify the record of conviction upon which the State is relying. The present indictment recites that, on the day of the current offense charged, the defendant had previously been convicted of the felonious offense of unlawful homicide punishable as manslaughter in the Superior Court of Waldo County in this State, that he had been committed to prison after such conviction and that, following said conviction and prison commitment, he had been released from the prison on November 15, 1969. This detailed information was adequate for the defendant to identify the precise record of conviction upon which the State expected to make its case and which he needed to prepare his defense.

The Court below did not err when it denied the defendant's motion to dismiss the indictment for insufficiency of its allegations respecting the previous conviction.

taquis, and State of Maine, the above named Defendant, Augustus F. Heald, Jr., did then and there unlawfully and feloniously have in his possession a .32 caliber Harrington & Richardson revolver, Premier Model, Serial No. 185732, a firearm capable of being concealed upon the

### Admissibility of the firearm in evidence

At trial on the current charge of possession of a firearm by a felon, the defendant objected to the introduction of the weapon in evidence on the ground that the State failed to establish the necessary chain of custody, which, it is contended, is the foundational basis for its admissibility. Proof of a chain of custody, i. e. an unbroken continuity of possession by the police authorities, is not necessarily required to support the admissibility of an exhibit when the issue involved is its identity.

As we said in *State v. Thibodeau*, Me., 353 A.2d 595, 603 (1976):

"We recognize that the custody of an exhibit readily identifiable by distinguishing features or hardly subject to change does not require the safeguards necessary to preserve the integrity of real evidence of a fungible or volatile nature which may be easily destroyed by natural or other forces. It is obvious that the same protective measures need not be taken to preserve the evidentiary probative value of such an exhibit as a coffee pot [here a pistol] as should surround the chain of custody of a bag of narcotics."

Here, the pistol, which the court allowed in evidence over the defendant's objection, bore the same serial number as the weapon seized from the defendant on February 16, 1970 and exhibited an "X" identical to that scratched upon it by the testifying witness, in addition to testimony that in its overall outward appearance, the exhibit was indistinguishable from the firearm found on the defendant. The identifying markings on the pistol, independently of the chain of custody, were adequate indicia of the identity of the firearm involved to support the admissibility of the exhibit in evidence. See also *State v. Eldridge*, Me., 334 A.2d 862, 866 (1975); *State v. Mosher*, Me., 270 A.2d 451, 453 (1970).

person, said day being *within five (5) years of his release from prison* on bail on November 15, 1969, *where he had been committed after conviction of a felony, to wit, manslaughter, by the Superior Court of Waldo County, State of Maine, . . . "* (Emphasis added)

*Willing possession—omission to charge*

 The defendant requested the trial Justice to instruct the jury that the elements of the crime charged are: the knowing and willing possession of a firearm by a previously convicted felon. The Justice did indicate that the proscribed possession had to be a knowing possession, but refused to charge in terms of willingness in respect thereto. In this, there was no error.

The requested instruction did not correctly state the law regarding the crime of unlawful possession of a firearm by a felon. Possession statutes, such as 15 M.R.S.A., § 393, making it unlawful for a felon to possess a firearm, require no particular scienter, except the knowledge of the presence of the firearm and its character as such. The Legislature, in enacting the reference statute, contemplated a knowing or conscious possession as an essential element of the offense. *Harris v. State*, 83 Nev. 404, 432 P.2d 929 (1967); *Ross v. State*, 232 A.2d 97 (Del.Supr.1967); *People v. Lofthouse*, 18 Ill.App.3d 378, 309 N.E.2d 608 (1974).

Willingness, as well as wilfulness, to violate the law as intended by the requested instruction, is not an essential ingredient of the crime of possession of a firearm by a felon. *State v. Harmon*, 25 Ariz.App. 137, 541 P.2d 600 (1975), cert. den., 425 U.S. 942, 96 S.Ct. 1681, 48 L.Ed.2d 185; *United States v. Petrucci*, 486 F.2d 329 (9th Cir. 1973), cert. den., 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287.

That a felon's possession of a firearm is a knowing or conscious possession may be proved by circumstantial evidence. *Ross v. State*, supra. In this case, the circumstances were sufficient to justify the jury finding beyond a reasonable doubt that Heald knew he was in possession of the revolver, where the gun was tucked away in the pocket of the jacket he was wearing. The record discloses no evidence whatsoever, not even a suggestion, that the revolver was in the defendant's jacket by accident or trickery.

*Possession of a concealable firearm*

 Upon appropriate motions for judgment of acquittal the defendant has properly raised for review his contention that, since the deputy sheriff who seized the weapon testified he saw the butt of a gun in the pocket of Heald's jacket as the defendant wheeled away from him, it was error to find the defendant guilty of possession of a firearm by a felon under 15 M.R. S.A., § 393, where the proof revealed that the pistol was not concealed. In support of his contention, the defendant cites: *People v. Crachy*, 131 Ill.App.2d 402, 268 N.E.2d 467 (1971), *Clemons v. State*, 9 Md.App. 127, 262 A.2d 786 (1970), and *Prince v. Commonwealth*, 277 S.W.2d 470 (Ky.1955). These cases are not apposite, since in each one the statutory proscription had to do with the carrying of a "concealed" weapon. Our statute, on the other hand, makes it unlawful for a felon within a stated period of time to have in his possession any pistol, revolver or any other firearm *capable of being concealed upon the person*. In section 391, the Legislature further defined a weapon capable of being concealed upon the person as including all firearms having a barrel of less than 12 inches in length. The Legislature, under 15 M.R.S.A., § 393, intended to proscribe, not only the possession upon one's person of a concealed weapon, but also the carrying of a weapon which was capable of being concealed upon the person, whether the weapon was hidden from view or not. The essential characteristic of the firearm which brings it within the scope of the statutory ban is its concealability. We said as much in *Toussaint v. State*, Me., 262 A.2d 123 (1970), where this Court ruled that possession of a firearm *as described in the statute* was one of the essential elements of the reference statutory crime.[6]

 Moreover, the defendant's claim that the State failed to prove the conceala-

---

**6.** Section 393 of Title 15 has now been repealed and a new section has been enacted in its place. See P.L.1977, c. 225, § 2.

bility of the firearm involved is without merit. The revolver was an exhibit in the case and the jury had it in the jury room during their deliberations. The jury could as the factfinder determine from the exhibit itself its capability of being concealed upon the person and could conclude from the mere view thereof that its possession satisfied the requirements of 15 M.R.S.A., § 393. See *State v. Smith*, Me., 379 A.2d 722 (Opinion dated November 4, 1977).

*Conviction of a felony within the scope of 15 M.R.S.A., § 1742*

A. The defendant first contends that his attempted appeal from the jury verdict of guilty of the current offense of possession of a firearm by a felon prior to the resumption of the second stage of the bifurcated trial to establish the defendant's previous felony conviction of manslaughter caused 15 M.R.S.A., § 1742 to become inapplicable for lack of finality respecting the latest conviction so-called. In this, the defendant is in error.

The dual indictment process required by this statute was enacted by the Legislature in an effort to protect the purity of the initial trial of the present criminal charge by excluding therefrom any evidence of a previous felony conviction, provided the defendant himself did not lay the basis for the introduction of such previous conviction for impeachment purposes by taking the stand at his trial.

Our second offender statute, 15 M.R.S.A., § 1742, does not give rise to a substantive offense distinct and separate from the current charge; it does not create a new crime. The punishment under it is for the present criminal offense only. What the act does, it provides a greater penalty for having committed the latest offense by reason of the fact the defendant is a subsequent offender. *McDonald v. Massachusetts*, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901); *State v. Rigg*, 258 Minn. 388, 104 N.W.2d 553 (1960); *State v. Price*, 59 Wash.2d 788, 370 P.2d 979 (1962); *Tyson v. Hening*, 205 Va. 389, 136 S.E.2d 832 (1964); *State v. Washington*, 47 N.J. 244, 220 A.2d 185, 187 (1966); *State v. Davis*, 258 Iowa 1192, 140 N.W.2d 925 (1966).

This agrees with our own view that the act merely enhances the punishment which may be meted out for the commission of the current offense. *Carr v. State*, 151 Me. 226, 228, 117 A.2d 63 (1955).

There is no appealable judgment until the sentence has been imposed on the current offense, either pursuant to the habitual offender statute if the previous conviction and sentence to a state prison have been proven beyond a reasonable doubt (*State v. Mottram*, 155 Me. 394, 156 A.2d 383 (1959)) or, should the jury find that the State has not sustained its burden of proof respecting the defendant's previous conviction and sentence to state prison, then pursuant to the statutory provisions relating to the current offense without regard to the habitual offender act.

As we said in *Mottram v. State*, Me., 263 A.2d 715 (1970), our recidivist statute has the single effect of increasing the maximum permissible limit of punishment for the conviction of the present offense. See *Stubbs v. State*, Me., 243 A.2d 57, 59 (1968).

B. The defendant further argues that 15 M.R.S.A., § 1742 was not applicable in the instant case, since the statute lays down as a pre-requisite for applicability that it be alleged and proved in a trial, or admitted in a trial, that the person presently convicted of a crime punishable by imprisonment in the State Prison

"had been before *convicted* and sentenced to any state prison by any court of this State . . . ." (Emphasis added).

Heald contends that the previous conviction contemplated by this statute is a final conviction, and not a conviction subject to or under appeal at the time of the commission of the current offense.

In chronological order, the manslaughter offense occurred on January 16, 1965 and Heald was convicted of that crime on June 17, 1965 (see *State v. Heald*, Me., 232 A.2d 79 (1967)). Following re-instatement, the appeal from the manslaughter conviction

was still pending on February 16, 1970 when the offense of possession of a firearm by a felon took place. The defendant was charged with this subsequent offense by grand jury indictment found on May 2, 1973. The manslaughter conviction had been affirmed by the Law Court on July 6, 1972. *State v. Heald*, Me., 292 A.2d 200 (1972).

Some authorities construe their habitual offender statutes as requiring the previous conviction to be a final judgment and hold that a previous conviction, pending an appeal therefrom, cannot be used as the basis of enhanced punishment pursuant to such statutes (see 24 B C.J.S. Criminal Law § 1960(6), notes 11 and 11.5 and cases cited therein). We disagree.

 As in the case of 15 M.R.S.A., § 393, the statute banning the possession of a firearm by a felon, parallel considerations would have motivated the Legislature in the use of similar terminology when providing for the enhancement of punishment for crime, if a person "had been before convicted and sentenced to any state prison," and the same statutory rules of construction to ascertain legislative intent would apply. We need not repeat what we said in connection with our analysis of 15 M.R.S.A., § 393, but we should emphasize the fact that legislative language must be given such flexibility of meaning as shall appear most reasonable and best suited to accomplish the objects of the legislation. *State v. S. S. Kresge, Inc.*, supra; *Davis v. State*, supra.

 The paramount purpose of habitual offender statutes is to protect society against the repetitious criminal; such statutes are essentially designed to combat recidivism.

Legislatures view with alarm the constant increase in criminal activity to which the recidivist contributes in large measure and, in an attempt to reach their objective of cutting down on crime, our Legislators set out to enhance the punishment for crim-

inal conduct by a person who had previously committed a serious crime, had been convicted thereof and sentenced to a state prison. Such legislation, they believed, would serve as a deterrent to criminals who might otherwise be tempted to continue a lifestyle of crime and, in the case of those who disregarded the statutory warning, it provided increased punishment for criminal conduct which, under such circumstances, our Legislators deemed aggravated the guilt and justified the greater penalty.

The legislative purpose would be frustrated, if the statute applied only to previous convictions which later became final judgments. Indeed, the recidivist who appealed his previous conviction would escape the penal additive of the habitual offender statute, notwithstanding that his previous conviction was affirmed on appeal. The Legislature undoubtedly had in mind that many appeals are frivolous, and, even in the case of non-frivolous appeals, that the percentage of reversals is minimal.[7]

 At the time of Heald's original appeal from the previous conviction of manslaughter in the summer of 1965 and on October 31, 1969 when he obtained a reinstatement of the appeal in habeas corpus proceedings, said appeals did not vacate the judgment of conviction. Review by the Law Court, whether by way of exceptions or by appeal from the denial of a motion for new trial, is a purely statutory proceeding and the scope, limits and conditions of such appellate procedure must either be found in express terms in the statutes authorizing the same or be implied from the nature and purpose of the legislation itself. See *In Re Smith*, 145 Me. 174, 177, 74 A.2d 225 (1950); *State v. Dodge*, 124 Me. 243, 245, 127 A. 899 (1925); *State v. Bey*, 161 Me. 23, 24, 206 A.2d 413 (1965).

Upon conviction of a crime which was not punishable by imprisonment for life, the court in its discretion could continue the

---

7. Should the previous conviction be subsequently reversed on appeal, remedial relief could possibly be available in post-conviction habeas corpus under 14 M.R.S.A., §§ 5502– 5508. But we intimate no opinion thereon at this time. In the instant case, the manslaughter conviction was affirmed.

matter for sentence, otherwise sentence had to be imposed, which sentence the court could suspend, but, if it did not suspend the sentence, its only power was to stay its execution. 15 M.R.S.A., § 1701. The statutory amendment (P.L.1965, c. 356, § 54) effective December 1, 1965 when the new rules of criminal procedure became effective, by providing that "[i]f a person is admitted to bail after conviction and commitment in execution of sentence, such admission to bail *shall vacate the effect of the original commitment . . . ,*" by its very terms did not affect the conviction and sentence. Rule 38(a), M.R.Crim.P. is merely declaratory of the statutory provisions. See Glassman, Maine Practice (3), § 38.1 at page 326.

This is consistent with what we said in *State v. Fletcher*, Me., 288 A.2d 92, at 94 (1972):

"The effect of the decree which the Single Justice made on Petitioner's habeas corpus petition was only to allow Defendant a late appeal. An appeal from a judgment of conviction in the Superior Court suspends the operation of the judgment and stays the execution of the sentence (if the Defendant so elects or if he is admitted to bail, as this Defendant was). 15 M.R.S.A. § 1701; M.R.Crim.P., Rule 38(a)(1). The ultimate denial of an appeal restores the judgment to effectiveness and the sentence regains its operative force. No new sentence is necessary or effective except in the event the first sentence is invalidated by the Court."

Here, the former conviction had been affirmed before the instant indictment under 15 M.R.S.A., § 1742 was rendered and trial thereof was had. The effect of the appeal was as though it had not been taken. *State v. Eisminger*, 124 Kan. 464, 260 P. 661 (1927); *People v. Morlock*, 234 Mich. 683, 209 N.W. 110 (1926); *State ex rel. Corbin v. Court of Appeals, Division I*, 103 Ariz. 315,

441 P.2d 544 (1968); *People v. Sarnblad*, 26 Cal.App.3d 801, 103 Cal.Rptr. 211 (1972).

*Equal Protection Violation—Unequal enforcement of habitual offender statute*

The defendant lastly contends that the prosecutor's decision to seek a separate indictment from the grand jury in connection with the charge of unlawful possession of a firearm by a felon pursuant to the habitual offender statute, 15 M.R.S.A., § 1742, and to prosecute him as a recidivist constituted invidious discrimination in violation of the equal protection clauses of the State and Federal Constitutions.[8] Heald argues that the reference prosecution was motivated by a desire on the part of the prosecutor to punish him for his efforts at prison reform and at aiding fellow prisoners to secure their constitutional rights.

 Rule 12(b)(2), M.R.Crim.P. provides that defenses and objections based on defects in the institution of the prosecution may be raised *only* by motion before trial. Failure to present any such defense or objection by motion before trial constitutes a waiver thereof. The question of discriminatory prosecution relates not to the guilt or innocence of the accused, but rather addresses itself to a constitutional defect in the institution of the prosecution. *United States v. Berrigan*, 482 F.2d 171, 175 (3rd Cir. 1973).

 The rule itself, however, expressly empowers the court to grant relief from the waiver for cause shown. Such happened in the court below, since the trial Justice entertained the defense, but the issue was aired before the Court without the jury.

A. Preliminarily, the defendant claims that it was error not to submit the issue of impermissible discrimination to the jury. We disagree. Rule 12(b)(4) prescribes that all issues of fact in relation to such defenses

---

**8.** Constitution of Maine, Art. I, Sec. 6–A:

"No person shall be deprived of life, liberty or property without due process of law; *nor be denied the equal protection of the laws, . . .*" (Emphasis supplied)

Amendment XIV to the Constitution of the United States:

Section 1. . . . "nor [shall any State] deny to any person within its jurisdiction the equal protection of the laws."

based on defects in the institution of the prosecution "shall be determined by the court with or without a jury or on affidavits or in such other manner as the court may direct." The court's handling of this issue as a court matter rather than submitting it to the jury for decision manifests the exercise of a sound judicial discretion. Jury disclosure of the defendant's claim that he was being singled out as a recidivist because of his advocacy in prison for prison reform and the enforcement of his fellow inmates' constitutional rights would tend to prejudice the jury against the defendant in connection with the issues directly involved in the habitual offender portion of the trial by showing him up as a trouble maker. Such collateral matters as the prosecutor's motives underlying the prosecution or the defendant's past conduct as well as his personal beliefs respecting the surcharge of recidivism are subjects best reserved for determination by the court alone. See *United States v. Berrigan*, supra.

B. The defense of discriminatory prosecution consists of two basic elements: (1) other individuals similarly situated have not been prosecuted for comparable criminal conduct, and (2) the selective enforcement was deliberately made on an impermissible and unjustifiable standard such as race, religion, a desire to discourage the exercise of one's constitutional rights or other invidious criteria. *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962); *United States v. Swanson*, 509 F.2d 1205 (8th Cir. 1975); *United States v. Berrios*, 501 F.2d 1207 (2nd Cir. 1974); *Mottram v. Murch*, 330 F.Supp. 51 (U.S.D.C., Me.1971).

The gist of the evidence which the defendant claims supports his contention of unconstitutional discrimination in the use by the State of the charge of habitual offender against him consists of the following factual situation. During the years 1969 and 1970 Heald had assisted other inmates and took an active part in the filing of numerous complaints in the United States District Court of Maine challenging prison conditions and practices raising due process issues involving, in some instances, inadequacy of food to lack of proper medical attention, and, in others, mail censorship and forbidden access to the news media. The prison authorities manifested their animosity toward him, so Heald testified, by lodging him in the "strip cell" naked for six months and keeping him on bread and water for 75 days. He spoke of beatings and told of his illegal transfer to a federal prison. The Classification Officer at the prison did admit that, out of an inmate population of some four hundred persons, he knew of only one instance where a violation of the habitual offender statute had been charged, although recidivists at the prison numbered about seventy individuals. The Justice below ruled that the evidence fell far short of supporting prosecutorial discrimination to the extent of a constitutional violation. We agree.

It is well established that a reasonable prosecutorial discretion in the enforcement of criminal laws is inherent in our criminal justice system and that the exercise of such discretion does not amount to unconstitutional discrimination unless it is deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification. *United States v. Swanson*, supra.

Many reasons may exist for the failure to prosecute persons subject to increased punishment as habitual offenders. It may be that the prior conviction may not be susceptible of proof, because of the inability to secure the knowledgeable witness. It may be that the particular prosecutor did not know of the previous conviction at the time of the grand jury proceedings. It may be that the prosecutor felt the statute relating to the current crime provided a range of penalty sufficient to vindicate the dignity of the State in the individual case without any need of the additional recidivist charge. It may be that prosecutorial policies may have been adopted to apply the subsequent offender statute only to persons with two previous convictions or more. It very well may be due also to laxity in prosecutorial agencies. We take note that prosecutorial officers are more or less autonomous in their own districts and that no comprehensive authoritative chart, even if the same

were proven practical, is available to promote and maintain uniformity in the enforcement of the criminal statutes.

That the correctional authorities were vindictive respecting the defendant may be inferred from this record, but there is no evidence whatsoever that the prosecutorial force shared the same sentiments. Presumptively, state's attorneys are conscious that the effect of unconstitutional discrimination in unequal enforcement of the criminal law might mean exoneration of the guilty at the expense of society. Such societal detriment should not be incurred, except upon evidence that is more than mere conjecture.

The ruling of the trial Justice that the evidence was insufficient to support an unconstitutional discrimination against the defendant was not erroneous as a matter of law.

On issues of fact triable by the court alone, even though in the course of a criminal prosecution, the findings of the presiding justice on such non-jury matters are not ordinarily to be set aside unless clearly erroneous. *State v. Barlow*, Me., 320 A.2d 895, 901 (1974) (suppression of alleged illegally seized evidence); *State v. Fernald*, Me., 248 A.2d 754, 763 (1968); *State v. Koucoules*, Me., 343 A.2d 860, 873 (1974) (voluntariness of consent to search); *McBride v. State*, 484 S.W.2d 480, 482 (Mo. 1972) (knowing and intelligent waiver of right to assistance of counsel); *United States v. Fratus*, 530 F.2d 644 (5th Cir. 1976) (competency to stand trial); *Kessler v. State*, 524 S.W.2d 221, 222 (Mo.App.1975) (withdrawal of guilty plea). But see *State v. Collins*, Me., 297 A.2d 620 (1972).

We have examined the other contentions pressed in this appeal, but find them without substance and without merit.

The entry will be

Appeal denied. Judgment affirmed as modified by commutation of the Governor and Executive Council.[9]

9. The original minimum sentence of 10 years was reduced to 5 years by commutation of the

POMEROY, WERNICK and ARCHIBALD, JJ., concur.

WEATHERBEE, J., sat at argument and participated in consultation, but died before the opinion was adopted.

DELAHANTY, J., did not sit.

Governor and the Executive Council which then existed.