**STATE of Maine**

v.

**John MYRICK.**

Supreme Judicial Court of Maine.

Argued Sept. 11, 1981.

Decided Oct. 26, 1981.

David M. Cox, Dist. Atty., Gary F. Thorne, Asst. Dist. Atty. (orally), Bangor, for plaintiff.

Anderson & Norton, Peter Adams Anderson (orally), Bangor, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE, and WATHEN, JJ.

CARTER, Justice.

After a bench trial in the Superior Court, Penobscot County, the defendant, John Myrick, was found guilty of violating 15 M.R.S.A. § 393 (1980),[1] a class C crime, which prohibits a person who has been convicted of a crime punishable by one year or more imprisonment from owning or having in his possession or under his control any firearm. On appeal, he contends that the indictment was insufficient, that the court's findings of fact did not establish that he had engaged in criminal conduct, and that § 393 as applied to him constitutes an *ex post facto* law and a bill of attainder. We affirm the conviction.

On April 22, 1975, the defendant was convicted on his plea of guilty in the Superior Court of cheating by false pretenses and was sentenced to a period of incarceration of one and a half to three years. At the time of that underlying conviction, 15 M.R.S.A. § 393 (1965)[2] made illegal the possession by convicted felons of concealable firearms. That statute was repealed by P.L. 1977, ch. 225 § 2, which enacted that part of the current § 393 prohibiting the ownership, possession, or control of "any firearm." Pursuant to § 393(7), "firearm" is defined by 17–A M.R.S.A. § 2(12–A) (Supp.1980) to include non-concealable weapons. *See State v. Gwinn*, Me., 390 A.2d 479, 481 n.2 (1978). The defendant was charged by indictment and convicted for having possessed illegally a shotgun on August 30, 1980.

### I. *Sufficiency of the Indictment*

The defendant first claims that the indictment charging the violation of § 393 was fatally deficient because it failed to allege that he wilfully or knowingly violated the statute.[3] In construing the super-

---

1. The section provides in pertinent part:

    1. Possession prohibited. No person who has been convicted of any crime, under the laws of the United States, the State of Maine or any other state, which is punishable by one year or more imprisonment or any other crime which was committed with the use of a dangerous weapon or of a firearm against a person, except for a violation of Title 12, chapter 319, subchapter III, shall own, have in his possession or under his control any firearm, unless such a person has obtained a permit under this section. For the purposes of this subsection, a person shall be deemed to have been convicted upon the acceptance of a plea of guilty or nolo contendere or a verdict or finding of guilty by a court of competent jurisdiction.

2. 15 M.R.S.A. § 393 (1965) provided:

    It shall be unlawful for any person who has been convicted of a felony under the laws of the United States or of the State of Maine, or of any other state, to have in his possession any pistol, revolver or any other firearm capable of being concealed upon the person. Anyone violating any of the provisions of this chapter shall be guilty of a felony, and upon conviction thereof, shall be punished by imprisonment for not less than one nor more than 5 years.

3. The indictment tracked the language of § 393, *see* note 1 *supra*, and charged:

    That on or about the 30th day of August, 1980, in the County of Penobscot, State of Maine, JOHN MYRICK did, having been convicted on April 22, 1975, of a crime under the laws of the State of Maine, which was punishable by one year or more imprisonment, to

seded § 393, this Court ruled in *State v. Heald*, Me., 382 A.2d 290 (1978), that a willingness or wilfulness to violate the statute is *not* an element of the offense. *Id.* at 297. P.L. 1977, ch. 225, § 2 expanded the scope of illegality to include the ownership and control as well as the possession of a firearm. This modification, however, did not constitute an express rejection of the construction imposed by *Heald.* The 1977 legislation purported only to make illegal the two additional proprietary capacities and to include non-concealable firearms within the statute's proscriptions. Additionally, we note that the purpose underlying both the current and superseded statutes is "... to prohibit the possession of firearms by persons who have been convicted of violent or serious crimes." L.D. 450, 108th Leg. at 2 (1977)[4]; *Heald*, 382 A.2d at 295. *See* discussion *infra* at 383. Our ruling in *Heald* thus retains its conceptual vitality and governs our examination of the current § 393.

We therefore conclude that a violation of the current § 393, as with the superseded statute, is not predicated on willingness or wilfulness. It is established that "an indictment is insufficient when it fails to allege every material fact that forms an essential element of the crime charged." *State v. Allison*, Me., 427 A.2d 471, 473 (1981). Because a wilful or willing violation is not an element of a violation of § 393, it need not be alleged in the indictment. *See Ellis v. State*, Me., 276 A.2d 438, 439 (1971); M.R.Crim.P. 7(c).

In *Heald* we held, however, that a possession to be within the scope of the superseded § 393 does include "... the knowledge of the presence of the firearm and its character as such." 382 A.2d at 297. Because the instant indictment did not allege that the defendant possessed the firearm with this knowledge, some question may be raised as to the instrument's sufficiency. We note that the defendant did not assert this particular argument either below

or during the course of this appeal. Yet, because the failure of an indictment to charge a criminal offense does constitute a jurisdictional defect, this Court may notice the issue even when not properly saved. *State v. Scott*, Me., 317 A.2d 3, 5 (1974).

The offense underlying the decision in *Heald* occurred in 1970, and thus no effect was given to 17–A M.R.S.A. § 51, which became effective in 1976. In pertinent part, this section now provides, as it did in 1976, that:

> 1. [a] person commits a crime only if he engages in voluntary conduct, including a voluntary act, or the voluntary omission to perform an act of which he is physically capable.

> 3. Possession is voluntary conduct only if the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession.

17–A M.R.S.A. §§ 51(1), (3) (Supp.1980). This statute embodies the substance of *Heald* on the point that knowledge of the fact of possession inheres in the concept of "possession" itself; it thus codifies the holding in *Heald* as it relates to § 393. *See State v. Flaherty*, Me., 400 A.2d 363, 366–67 (1979).

The indictment need not allege that the underlying and allegedly criminal behavior was voluntary. The indictment is designed "to protect the defendant from further jeopardy, to avoid unfair surprise at trial, [and] to aid defendant in preparation of a defense by providing adequate notice to the charge...." *State v. Damon*, Me., 395 A.2d 121, 122 (1978), *quoting State v. Nappi*, Me., 369 A.2d 230, 232 (1977). *See also State v. Wing*, Me., 426 A.2d 1375, 1376, 1377 (1981). Here, § 51(3) operates merely to elaborate on the Legislature's concept of the possession prohibited by § 393. The

---

wit, Cheating By False Pretenses, did own or have in his possession or under his control a firearm.

4. Other portions of the bill not relevant here were revised by L.D. 1761, 108th Leg. (1978).

term "possession," as used in § 393 and, in this case, in the indictment itself, thus carries with it the notion of an awareness of the fact of possession. An explicit allegation of voluntary conduct in the form of conscious possession would not promote the purposes of the indictment. Notice to the defendant of the nature of the charge as well as the alleviation of unfair surprise at trial are accomplished by the mere existence of § 51. Further, the defendant is protected against a subsequent indictment for the same conduct, should the occasion arise, because reference to § 51 can be made to determine the specific conduct underlying the present action.[5] The validity of this indictment therefore must be upheld.

## II. *Sufficiency of the Court's Findings*

The defendant next argues that because the trial court failed to find that he possessed the firearm in knowing violation of the law, the conduct in which he was found to have engaged did not reach the level of criminality. The presiding justice predicated guilt on findings that "Mr. Myrick did own or have in his possession or under his control a firearm and at that time he was a convicted felon."[6]

As we have noted, *Heald* ruled that a violation of § 393 is not premised on the defendant's willingness or wilfulness to violate the law. 382 A.2d at 297. Further, we now hold, *supra* at 381, that a willingness

or wilfulness to violate the current § 393 is not an ingredient of the offense. Therefore, any such findings would be superfluous, and the trial court's failure to make them is of no consequence.

■■■■ Because, however, the possession made unlawful by § 393 must be a conscious and knowing one pursuant to § 51(3), guilt, if based on possession, must rest on proof of that fact. The lower court did not include an express finding that the defendant knowingly or consciously possessed the shotgun. Consequently, an implicit factual finding is attributed to it. *See State v. Michael Z.*, Me., 427 A.2d 476, 478 (1981). Because we have not been provided with a record[7] that would enable us to determine whether this implicit finding is unsupported by credible evidence, this court is unable to consider such a challenge. *State v. Meyer*, Me., 423 A.2d 955, 956–57 (1980); *State v. Christianson*, Me., 404 A.2d 999, 1005–06 (1979).

## III. *Ex Post Facto*

*Ex post facto* laws, proscribed by *Me. Const.* art. I, § 11 and *U.S.Const.* art. I, § 10, include those which either inflict "a punishment more severe than was prescribed at the time the crime was perpetrated" or, "in effect if not in purpose, [deprive] him of some protection to which he has become entitled." *In re Stanley*, 133 Me. 91, 93–94, 174 A. 93, 95 (1934), *aff'd sub*

---

**5.** This is not a case in which the indictment fails to identify the purportedly criminal act. In *State v. King*, Me., 371 A.2d 640 (1977), the Court found insufficient an indictment which alleged that the defendant forged the name of another "on an absentee ballot." Because "absentee ballot" could refer to either the ballot, itself, or the return envelope, the indictment did not adequately inform the defendant of the nature of the crime. Further, because the "exact crime" for which he was convicted remained unclear, his conviction would not preclude his being placed in jeopardy again for the same offense. *Id.* at 644. Similarly, *State v. Good*, Me., 308 A.2d 576 (1973) held invalid an indictment which tracked the statutory language and alleged that the defendant created "a breach of the peace" by using "language so vile and obsceneit [*sic*] would offend common decency to describe it in this complaint and being disorderly...." Because the instrument

did not identify either the disorderly acts or the offensive language, the defendant could not adequately prepare his defense. *Id.* at 578–79.

In the case at hand, the interrelation of §§ 51 and 393 leaves no doubt as to the nature of the act alleged in the indictment. Consequently, the defendant was informed of the charge sufficiently to prepare a defense, and the basis for a future claim of double jeopardy is secured.

**6.** We take this characterization of "felon" to mean one, such as the present defendant, who "... has been convicted of any crime ... which is punishable by one year or more imprisonment...." 15 M.R.S.A. § 393(1).

**7.** Pursuant to M.R.Crim.P. 39(b), defendant's counsel requested the deletion from the standard transcript of "[a]ll testimony of witnesses and statements of counsel."

*nom. Stanley v. Public Utilities Commission*, 295 U.S. 76, 55 S.Ct. 628, 79 L.Ed. 1311 (1935), *quoted in Watson v. State Commissioner of Banking*, Me., 223 A.2d 834, 837 (1966). Here, the defendant claims that the 1977 expansion of § 393 to include within its prohibition the possession of non-concealable firearms breaches his guarantee to be free form *ex post facto* laws in these two forms.

▪▪▪ The constitutional prohibition against *ex post facto* legislation is limited to statutes which are designed to impose further punishment. *In re Stanley*, 133 Me. at 93, 174 A. at 94; *Trop v. Dulles*, 356 U.S. 86, 95–96, 78 S.Ct. 590, 595–596, 2 L.Ed.2d 630, 639–40 (1957). In *Cases v. United States*, 131 F.2d 916 (1st Cir. 1942), the defendant appealed from a conviction under a similar possession statute which had been enacted in 1938; the underlying conviction occurred in 1922. In determining whether the possession statute was penal in nature and thus whether the *ex post facto* restriction applied, the court stated:

> ... if the past conduct which is made the test of the right to engage in some activity in the future is not the kind of conduct which indicates unfitness in the activity, it will be assumed, as it must be, that the purpose of the statute is to impose an additional penalty for the past conduct. If, however, the past conduct can reasonably be said to indicate unfitness to engage in the future activity the assumption will be otherwise.

*Id.* at 921. The *Cases* court concluded that the statute was designed to prevent the possession of firearms by those who had "demonstrated their unfitness to be entrusted with dangerous instrumentalities...." *Id.* Because there existed a sufficiently rational connection between the defendant's past activity and the legislative purpose to protect the public, the law did not implicate the *ex post facto* prohibition. *Accord, United States v. Three Winchester 30–30 Caliber Lever Action Carbines*, 504 F.2d 1288, 1290 n.5 (7th Cir. 1974); *Cody v. United States*, 460 F.2d 34, 37 (8th Cir.), *cert. denied* 409 U.S. 1010, 93 S.Ct. 454, 34 L.Ed.2d 303 (1972); *United States v. McCreary*, 455 F.2d 647, 648 (6th Cir. 1972); *United States v. Donofrio*, 450 F.2d 1054, 1056 (5th Cir. 1971); *United States v. Karnes*, 437 F.2d 284, 289–90 (9th Cir.), *cert. denied* 402 U.S. 1008, 91 S.Ct. 2189, 29 L.Ed.2d 430 (1971).

This Court has similarly held that 15 M.R.S.A. § 393 (1965) was enacted to lessen "a high potential of danger to the public" and to reduce the "probability that the convicted individual would continue his criminal activity. The Legislature could justifiably conclude there was a need for gun control legislation in the case of convicted criminals ...." *Heald*, 382 A.2d at 295. This purpose is also evident in the current version of § 393 under which the defendant was convicted. *See* L.D. 450, 108th Leg. at 2 (1977), *quoted supra* at 3. The disability created by section 393 thus operates to protect members of the public; therefore, the statute furthers a legitimate governmental interest. Because there is not additional punishment for the underlying offense within the meaning of the constitutional provision, § 393 as applied to the defendant does not violate his guarantee to be free from both the infliction of an increased punishment and the deprivation of a protection to which he claims to have become entitled.

### IV. *Bill of Attainder*

Also prohibited by *Me. Const.* art. I, § 11 and *U.S.Const.* art. I, § 10 are bills of attainder, which "apply to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial...." *United States v. Lovett*, 328 U.S. 303, 315, 66 S.Ct. 1073, 1078, 90 L.Ed. 1252, 1259 (1946). Here, the defendant claims that the deprivation of his firearm amounted to a seizure without judicial proceedings.

▪▪▪ As with *ex post facto* laws, a bill of attainder is penal in nature. *Nixon v. Administrator of General Services*, 433 U.S. 425, 472–73, 97 S.Ct. 2777, 2805, 53 L.Ed.2d 867, 909–10 (1977); *Trop*, 356 U.S. at 95–96, 78 S.Ct. at 595–596, 2 L.Ed.2d at 639–40; *Lovett*, 328 U.S. at 315, 66 S.Ct. at 1078, 90 L.Ed. at 1259. As we have stated, *supra*,

section 393 does not impose an additional penalty for the underlying felony; rather, it embodies a legitimate governmental purpose to protect the public from those the Legislature has justifiably deemed to have shown their unfitness to possess dangerous weapons by creating a distinct offense. Accordingly, section 393 as applied to the defendant does not constitute a bill of attainder. *Winchester; Cody; Donofrio.*

The entry is:

Judgment affirmed.

All concurring.