Submitted October 6, affirmed December 4, 1978

STATE OF OREGON, *Respondent,*

*v.*

GUADALUPE PADILLA PALOMINO, *Appellant.*

(No. 78-3889 T, CA 11658)

587 P2d 107

Neal G. Buchanan, Klamath Falls, filed the brief for appellant.

James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and Donald L. Paillette, Assistant Attorney General, Salem, filed the brief for respondent.

Before Schwab, Chief Judge, and Lee, Richardson, and Joseph, Judges.

RICHARDSON, J.

## RICHARDSON, J.

Defendant appeals his conviction of Driving While Under the Influence of Intoxicants, in violation of ORS 487.540.

Defendant was arrested for the offense on March 8, 1978. At that time he was given a breathalyzer test which recorded his blood alcohol level to be .15 of one percent. Prior to trial he moved to suppress the results of the breathalyzer test on the ground that on March 21, 1978, thirteen days after the test was administered, the instrument was determined to be malfunctioning.[1] The instrument had been certified as accurate on January 25, 1978. Defendant's motion was denied and the case was tried before a jury. At trial defendant's objection to the introduction of the test results was overruled.

Defendant's sole argument on appeal is that because the instrument was subsequently found to have a malfunction, the test results were inadmissible.[2] Defendant cites *State v. Deimeke,* 500 SW 2d 257 (Mo App 1973), in support of his argument. That case is factually similar to the case here at issue. The Missouri court's rationale is expressed in the following passage from the opinion:

> "There was no evidence to fix the time when this malfunction occurred but from the evidence it is inescapable that it occurred sometime between the 1st of December, 1970, and the 2nd day of January, 1971. The blood test of appellant was conducted between those two dates, to-wit, on the 13th day of December, 1970. A jury may not be permitted to speculate when this [malfunction] occurred.

---

[1] It is not clear as to what extent the instrument was disabled. The notation from the Instrument Test Record states that the red indicator light was not working and that the instrument was taken in for repair.

[2] Defendant makes no claim the test result should be excluded because the state failed to give him the breathalyzer ampoule for testing. We are thus not involved with the issue decided in *State v. Michener,* 25 Or app 523, 550 P2d 449, *rev den* (1976).

"In this posture, we hold then that the State failed to carry its burden imposed upon it by the statute which made admissible into evidence the results of the chemical analysis of appellant's blood only if the test was performed according to methods approved by the state division of health. Trooper Hale, unwittingly though it might have been, failed to adhere strictly to the operating procedures set forth by the manufacturer because of a malfunction in the machine of which he was indubitably unaware at the time." 500 SW 2d at 259.

We decline to adopt the rationale of the Missouri court. The holding of that court depended upon an assumption that the instrument, found to be inaccurate when subsequently tested, was inaccurate at the time the defendant was given the test. The Oregon legislature, by requiring certification testing every 60 days, has mandated that blood alcohol tests could be made on the machine during this interval without further certification. Once the state has laid the basic foundation for admissibility, the accuracy of the machine at the time of the test becomes an issue of fact for the trier of fact.

Defendant's argument, carried to its logical conclusion, would mean that if at the end of a 60 day certification period the machine was found to be malfunctioning, all blood alcohol tests conducted since that last certification would be inadmissible. It is unlikely the legislature intended that result to follow from the machine certification procedure.

The state laid a proper foundation under ORS 487.815. The instrument used was certified as accurate 42 days prior to the test given to defendant. Any malfunction detected subsequent to this certification does not preclude admission of the test results. The discovered failure only reflects upon the weight to be accorded the test results. We cannot assume as a matter of law the machine was inaccurate on the day defendant was tested.

Affirmed.