STATE of Maine

v.

**James L. HEBERT.**

Supreme Judicial Court of Maine.

Argued Sept. 23, 1981.
Decided Nov. 24, 1981.

G. Arthur Brennan, Dist. Atty., Joseph A. Wannemacher, Asst. Dist. Atty., Mary C. Tousignant, Legal Intern (orally), Alfred, for plaintiff.

Charles D. Jamieson (orally), Grover G. Alexander, Gray, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE, AND WATHEN, JJ.

VIOLETTE, Justice.

The defendant brings this timely appeal from convictions for speeding, 29 M.R.S.A. § 1252,[1] and operating under the influence

---

1. The statute reads in pertinent part:

    4. *Criminal offense.* Any person who operates a motor vehicle at a speed which exceeds, by 30 miles an hour or more, speeds fixed pursuant to section 1251 or section 1255, or which exceeds, by 30 miles an hour or more, the maximum rates of speed fixed by subsection 2 shall be guilty of a misdemeanor.

    29 M.R.S.A. § 1252 (1978).

of intoxicating liquor, 29 M.R.S.A. § 1312 (Supp.1981), following a jury trial held in Superior Court, York County, on January 26–27, 1981. Defendant claims error in the trial court's admission into evidence of testimony concerning a calibration test of the officer's car speedometer, and in the denial of his motion to acquit for lack of evidence. We affirm the two convictions.

Defendant was arrested for criminal speeding and operating under the influence of intoxicating liquor on January 25, 1980, by a state trooper who had pulled him over after following Hebert's car which was passing other vehicles rapidly and far to the left side of the road. The trooper clocked the car's speed at 85 mph in a 50 mph zone. The jury could have found the following facts to be true at the time of the arrest: defendant's eyes were red and glassy, and his speech was slow; he had difficulty locating his registration and driver's license; he nearly fell over when he bent to pick something up; he could not walk a straight line without stumbling; and he had consumed at least four beers that evening.

I

■ At trial, the arresting officer testified that prior to the arrest, on September 12, 1979, he had calibrated his car's speedometer. This test consisted of driving his car past a stationary police vehicle which recorded the car's speed on a radar unit. The officer testified that when his car speedometer read 40, the radar unit read 40; when his speedometer indicated 50 mph, the radar unit read 48 mph, and so on up to a speedometer reading of 80 mph when the unit indicated 78 mph. The disparity between the speedometer and radar unit was never more than 2 mph at any one reading.

Defendant argues that the arresting officer's testimony was hearsay, since the trooper testified to what another trooper told him the radar unit read, and should have been excluded from evidence. We agree that this testimony was clearly hearsay as defined in M.R.Evid. 801 and therefore was improperly admitted into evidence. We find, however, that the error was harmless because the trooper's testimony was merely cumulative: the state introduced into evidence, without objection by defendant, a card entitled "Radar Check" which was a written record of the calibration test of the arresting officer's car speedometer. The card, though hearsay, was admissible into evidence under the business records exception to the hearsay rule. M.R.Evid. 803(6); see State v. Ing, 53 How. 466, 497 P.2d 575 (1972); People v. Foster, 27 N.Y.2d 47, 313 N.Y.S.2d 384, 261 N.E.2d 389 (1970) (speedometer test record is a "classic example" of a routine business record).

II.

■ As his second point on appeal, defendant asserts that the officer's testimony indicating that defendant's car exceeded a speed of 85 mph should not have been admitted into evidence because the accuracy of the police vehicle's speedometer had not been established. The state presented evidence that prior to the arrest, the speedometer had been calibrated for accuracy against a radar unit as hereinbefore stated, and the radar itself had been calibrated internally and by using two different tuning forks, a standard procedure for calibrating radar units. Defendant maintains that the reliability of the internal calibration and the tuning forks must also be proven. We hold that evidence of the accuracy of the speedometer goes only to the weight to be assigned the speed reading and is not a foundational requirement for admission of the speedometer reading into evidence. Therefore, the presiding justice correctly overruled defendant's objection to the admission of this evidence.

III.

Our resolution of the issues discussed above disposes of defendant's third conten-

tion that without the speeding evidence both convictions must fall for lack of sufficient evidence.

The entry is:

Judgment affirmed.

All concurring.