STATE of Maine

v.

Jeffrey PICKERING.

Supreme Judicial Court of Maine.

Argued March 22, 1983.

Decided July 1, 1983.

Paul Aranson, Dist. Atty., Portland, Wayne S. Moss, Asst. Atty. Gen. (orally), Augusta, for plaintiff.

E. Paul Eggert (orally), Daniel Lilley, Portland, for defendant.

Before GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

WATHEN, Justice.

Defendant Jeffrey Pickering was convicted by jury verdict in the Superior Court (Cumberland County) of the criminal offense of operating a motor vehicle while under the influence of intoxicating liquor. 29 M.R.S.A. § 1312–B (1983). The defendant presents three issues on appeal from that conviction: (1) the presiding justice erred, at the suppression hearing, in excluding evidence of the reliability of a test for blood-alcohol content; (2) the complaint impermissibly charged him with operating while under the influence *or,* in the alternative, with *operating while having an excessive* blood-alcohol content; and (3) his conviction violates constitutional guarantees of due process and equal protection, since the criminal conduct for which he was charged is also declared by statute to be a traffic infraction for which only a civil penalty is provided. We deny the appeal and affirm the judgment of conviction.

### I.

The defendant was placed under arrest during the early morning hours of September 29, 1981, for operating a motor vehicle while under the influence of intoxicating liquor. He submitted to an intoxilyzer test for the purpose of determining blood-alcohol content. The criminal complaint filed against the defendant charged that he violated 29 M.R.S.A. § 1312–B by operating a motor vehicle "while having 0.10% or more by weight of alcohol in his blood or while under the influence of intoxicating liquor." Prior to trial, the defendant moved to require the State to elect one alternative, to

dismiss the complaint, and to suppress the test results. All motions were denied. At the conclusion of trial, and upon conviction for "operating under the influence as charged," the defendant was sentenced to 48 hours in jail, a $350 fine, and a 90-day suspension of his operator's license. The present appeal followed.

## II.

Defendant moved to suppress the results of the intoxilyzer test on the grounds that it was not properly administered and because of the "inherent unreliability of the intoxilyzer." The motion was heard on the morning that trial was scheduled to commence. The defendant's first witness was the officer who administered the test. His testimony clearly established compliance with the prerequisites set forth in 29 M.R. S.A. § 1312(6) for the admission into evidence of test results.[1] The officer testified that the test was administered twice and

the results obtained were 0.149% and 0.168%. He further testified that the intoxilyzer machine was calibrated six days prior to defendant's arrest and again on the day following the arrest, and on each occasion the machine tested within an acceptable range. It was acknowledged, however, that the machine was not calibrated immediately prior to the tests performed on the defendant.

At the conclusion of the officer's testimony, the defendant sought to call a chemist as an expert witness. Through an offer of proof, he asserted that the witness would testify that since the time of arrest the departmental regulations for use of the intoxilyzer had changed in two respects.[2] While it was conceded that the testing complied with the regulations in effect at the time of arrest, the defendant wished to demonstrate that the testing would not have been valid under the regulations in

1. 29 M.R.S.A. § 1312(6) provides in relevant part:

6. *Administration of tests.* . . . .
[A] law enforcement officer may test the breath of any person whom there is probable cause to believe has operated or attempted to operate a motor vehicle while under the influence of intoxicating liquor and who has chosen a breath test, by use of a self-contained, breath-alcohol testing apparatus to determine the blood-alcohol level, provided the testing apparatus is reasonably available. The procedures for the operation and testing of self-contained breath-alcohol testing apparatuses shall be as provided by regulation promulgated by the Department of Human Services. The result of any such test shall be accepted as prima facie evidence of the blood-alcohol level in any court.
Approved self-contained, breath-alcohol testing apparatus shall have a stamp of approval affixed by the Department of Human Services after periodic testing. That stamp of approval shall be valid for a limited period of no more than 1 year. Testimony or other evidence that the equipment was bearing the stamp of approval shall be accepted in court as prima facie evidence that the equipment was approved by the Department of Human Services for use by the law enforcement officer to collect and analyze a sample specimen of the defendant's breath. Testimony or other evidence that any materials used in operating or checking the operation of the equip-

ment were bearing a statement of the manufacturer or of the Department of Human Services shall be accepted in court as prima facie evidence that the materials were of a composition and quality as stated.
Failure to comply with any provisions of this subsection or with any regulations promulgated in this subsection shall not, by itself, result in the exclusion of evidence of blood-alcohol level, unless the evidence is determined to be not sufficiently reliable.
. . . .
A person certified by the Maine Criminal Justice Academy, under certification standards to be set by the academy, as qualified to operate approved self-contained, breath-alcohol testing apparatuses may operate those apparatuses for the purpose of collecting and analyzing a sample specimen of defendant's breath.

2. The offer of proof was as follows:
[T]here are now standards promulgated for the operation of the breathilyzer test which require several things. One requires that the calibration check be made before each test is run. Two, then when there is a discrepancy of .02 percent between the two test results— first require that two test results be run— when there is a discrepancy of .02, the operator is required to be administered a third and fourth test because the first test with that individual (sic) of discrepancy is considered inherently invalid.

effect at the time of trial. The proffered expert witness would have testified that the testing, although in compliance with the regulations in effect at the time of the testing, was nevertheless scientifically unreliable as evidenced by the subsequent change in the regulations. The suppression justice ruled that such evidence of unreliability went to the weight of the test results rather than to their admissibility. The court declined to hear the witness and denied the motion to suppress.

 The prerequisites set forth in section 1312(6) serve as a *foundational* indicia of reliability. The statute declares that any test taken in compliance with those requirements is prima facie evidence of blood-alcohol level in any court.[3] Evidence addressing the accuracy and reliability of the result of a properly administered test creates an issue of fact to be considered by the jury in weighing the evidence. *See State v. Whitney,* 436 A.2d 412, 413 (Me.1981). *See also State v. Hebert,* 437 A.2d 185, 186 (Me.1981) (*accuracy* of speedometer which was calibrated pursuant to standard procedure goes only to weight).[4]

 Subsequent changes in departmental regulations do not, without more, render inadmissible the results of tests which were properly administered in compliance with the statutory and regulatory provisions in effect at the time of testing. Accordingly, defendant failed to establish any basis for

suppressing the test results in this case. The court committed no error in declining to hear the proffered evidence of unreliability.

### III.

The criminal complaint in this case charged defendant with a violation of 29 M.R.S.A. § 1312–B for "operating a motor vehicle while having 0.10% or more by weight of alcohol in his blood *or* while under the influence of intoxicating liquor." (emphasis added.) In the Superior Court, defendant moved, without success, to require the State to elect one of the alternatives. On appeal, the defendant now contends that by the use of the disjunctive, charging him in the alternative, the State potentially deprived him of a unanimous jury verdict and did deprive him of "his ability to defend vigorously against each charge." Defendant cites no authority in support of his position and we find it to be without merit.[5]

 The complaint in this case follows the exact language of the statute. Generally, in criminal pleadings, it is sufficient for the indictment or complaint to employ the language of the statute if it adequately provides "a defendant of reasonable and normal intelligence with a clear identification of the crime and conduct charged." *State v. Saucier,* 421 A.2d 57, 58 (Me.1980); *see also State v. Cameron,* 456 A.2d 8, 9

---

3. While the statutory criteria of section 1312(6) constitutes a legislative determination of foundational reliability, lack of compliance with those criteria or departmental procedural regulations does not necessarily preclude admissibility of blood-alcohol results. As long as the test remains "sufficiently reliable", test results will be admissible. *State v. McConvey,* 459 A.2d 562 at 567–568 (Me.1983).

4. Other courts in ruling upon the preliminary admissibility of blood alcohol tests have consistently applied this same rationale. *See, e.g., People v. Bush,* 171 Cal.Rptr. 274, 279 (1981); *State v. Liuafi,* 1 Hawaii App. 625, 637, 623 P.2d 1271, 1279 (1981); *Shultz v. State,* Ind. App., 417 N.E.2d 1127, 1136–37 (1981); *People v. Carter,* 78 Mich.App. 394, 399–400, 259 N.W.2d 883, 884–85 (1977); *State v. Dille,* 258

N.W.2d 565, 569 (Minn.1977); *State v. Bush,* 595 S.W.2d 386, 388 (Mo.App.1980); *State v. Gerber,* 206 Neb. 75, 90–91, 291 N.W.2d 403, 411–12 (1980); *State v. Ghylin,* 248 N.W.2d 825, 831–32 (N.D.1976); *State v. Palomino,* 37 Or.App. 309, 312, 587 P.2d 107, 109 (1978); *Commonwealth v. Benson,* 280 Pa.Super. 20, 31–32, 421 A.2d 383, 389 (1980); *State v. Helmer,* 278 N.W.2d 808, 813 (S.D.1979). *See also State v. Clark,* R.I., 423 A.2d 1151, 1158 (R.I. 1980) (benzidine test used to detect presence of blood). *See generally* Annot., 96 A.L.R.3d 745 (1980).

5. *See State v. Hickey,* 459 A.2d 573 (Me.1983), for a general discussion of those factors which suggest the need for requiring the State to make an election.

(Me.1983); *State v. Carter,* 444 A.2d 37, 39 (Me.1982); *State v. Gordon,* 437 A.2d 855, 857 (Me.1981); *State v. Holt,* 391 A.2d 822, 824 (Me.1978). The conduct charged in this case, pursuant to section 1312–B, is clearly identified, and defendant has no reasonable basis to claim that he was uninformed of or confused by the nature of the charge against him. The fact that the underlying statute is phrased in the disjunctive does not alter this conclusion.

The defendant was placed at no disadvantage by the use of the word "or" in the complaint. In *Ramsey v. State,* 228 A.2d 529, 530 (Me.1967), this Court upheld an indictment which set forth a charge of indecent liberties, stated in two alternatives, and joined by the disjunctive. In doing so, we noted: "The statute described the offense, in the disjunctive; yet we think the acts prohibited constitute but one offense which may be charged in the conjunctive or may be charged by alleging either description of the offense." *Id., quoting, State v. Farnham,* 119 Me. 541, 545, 112 A. 258, 259 (1921). Other jurisdictions have applied this same reasoning in upholding indictments which track disjunctive statutory language proscribing driving while under the influence, similar to that now challenged. *See, e.g., State v. Weidner,* 192 Neb. 161, 166–67, 219 N.W.2d 742, 745 (1974); *State v. Carsner,* 45 Or.App. 115, 117–18, 608 P.2d 560, 561, *rev'd on other grounds,* 289 Or. 645, 616 P.2d 491 (1980); *State v. Sheppard,* 248 S.C. 464, 150 S.E.2d 916, 917 (S.C.1966).

■ The legislative history to section 1312–B supports this construction. *See* L.D. 1681, 1682 (110th Legis.1981). Furthermore, the recent legislative amendment to section 1312–B, which expressly permits a statement of the charge in the alternative, is evidence of the fact that the legislature intended section 1312–B to address but one crime, providing alternative methods of proof. 29 M.R.S.A. § 1312–B(1–A) provides:

> *Pleading and proof.* The alternative defined in subsection 1, paragraphs A and B may be pleaded in the alternative. The State may, but shall not be required to, elect prior to submission of [sic] the fact finder.[6]

### IV.

The remaining issue on appeal involves a consideration of the constitutionality of certain provisions of the 1981 reform of Maine's "drunk driving" law.[7] In 1981, the legislature adopted P.L.1981, ch. 468, §§ 5–12 to become effective on September 18, 1981. Insofar as it is relevant to the present case, the enactment resulted in the creation of both a criminal and civil violation for operating under the influence, with different penalty provisions for each offense. Section 1312–B of 29 M.R.S.A. specifies the criminal violation as follows:

> *1. Offense.* A person is guilty of a criminal violation under this section if he operates or attempts to operate a motor vehicle:
>
> > A. While under the influence of intoxicating liquor or drugs or a combination of liquor and drugs; or
> >
> > B. While having 0.10% or more by weight of alcohol in his blood.

Section 1312–C describes a traffic infraction using the identical language.[8]

---

**6.** This subsection became effective on April 15, 1982, subsequent to the date of the offense in this case. It is clear, however, that the legislature adopted the subsection to remove any doubt which might have existed and to clarify its earlier enactment. *See* P.L.1981, ch. 679 (emergency preamble).

**7.** For a review of the entire spectrum of constitutional issues presented by the 1981 reform *see* Comment, *Constitutional Issues Raised By the Civil-Criminal Dichotomy of the Maine OUI Law,* 35 Me.L.Rev. 385 (1983).

**8.** The full text of section 1312–C is as follows:

> § *1312–C. Traffic infraction of operating under the influence of intoxicating liquor or drugs or with an excessive blood-alcohol level; fine and suspension*
> *1. Election of charge.* When a person has been arrested or summonsed under section 1312 for a violation of section 1312–B, the

The criminal penalties provided for the violation of section 1312-B include, as a minimu, a fine of not less than $350, not less than 48 consecutive hours of incarceration, and suspension of the right to operate a motor vehicle for at least 90 days. Section 1312-C, on the other hand, provides as a civil penalty a fine of not less than $250 nor more than $500, together with a suspension of the right to operate a motor vehicle for not less than 45 days.

■ The mechanism by which the determination is made whether an incident is to be prosecuted as a traffic infraction or as a crime is described in section 1312-C. Essentially, the outline of the statutory format is as follows: All charges of operating under the influence or with an excessive

attorney for the State may elect to charge the defendant with the traffic infraction of operating under the influence of intoxicating liquor or drugs or with an excessive blood-alcohol level under this section. The determination of the attorney for the State, under provisions of subsections 5 and 7, that a person should be prosecuted under either this section or under section 1312-B shall not be subject to review.

2. *Traffic infraction defined.* A person commits a traffic infraction under this section if he operates or attempts to operate a motor vehicle:

A. While under the influence of intoxicating liquor or drugs or a combination of liquor and drugs; or

B. While having 0.10% or more by weight of alcohol in his blood.

2-A. *Pleading and proof.* The alternatives defined in subsection 2, paragraphs A and B may be pleaded in the alternative. The State may, but shall not be required to, elect prior to submission to the fact finder.

3. *Fine.* The traffic infraction of operating under the influence of intoxicating liquor or drugs or operating with an excessive blood-alcohol level is a violation for which a fine of not less than $250 nor more than $500 may be adjudged. the minimum fine shall not be suspended.

4. *Suspension.* The license or permit to operate, right to operate a motor vehicle or right to apply for or obtain a license of any person adjudicated guilty of violating subsection 2 shall be suspended by the court for a period of 45 days. The period of suspension shall not be suspended by the court. The court shall give notice of the suspension and shall take physical custody of an operator's license or permit as provided in section 2241-H. The Secretary of State may impose an additional period of suspension, as provided in section 1312-D, subsection 1-A, and may extend any period of suspension until satisfaction of any conditions imposed by him pursuant to section 1312-D, subsection 3.

5. *In lieu of criminal violation.* The attorney for the State shall not elect to charge a violation of subsection 2 in lieu of criminal prosecution under section 1312-B with respect to any defendant who:

A. Was tested as having a blood-alcohol level of 0.20% or more;

B. Was driving in excess of the speed limit by 30 miles an hour or more during the operation which resulted in the prosecution for operating under the influence or with a blood-alcohol level of 0.10% or more;

C. Eluded or attempted to elude an officer, as defined in section 2501-A, subsection 3, during the operation which resulted in the prosecution for operating under the influence or with a blood-alcohol level of 0.10% or more; or

D. Had been convicted of a violation of former section 1312, subsection 10, paragraph A, convicted of a violation of section 1312-B, or adjudicated guilty of a traffic infraction under this section within the 6 years immediately preceding the date of the commission of the new offense.

6. *Construction.* The matter set out in subsection 5 and 7 are not elements of the offense and are not subject to proof or disproof as prerequisites or conditions for conviction or adjudication under this section or section 1312-B.

7. *Other circumstances.* The attorney for the State may elect to charge a violation of section 1312-B, in lieu of civil prosecution under this section, in any other circumstances. These circumstances include, but are not limited to, when the defendant:

A. During the course of the operation which resulted in the prosecution for operating under the influence:

(1) Was operating between one and 30 miles an hour in excess of the speed limit;

(2) Failed to stop for an officer, as defined in section 2501-A, subsection 2;

(3) Was involved in a traffic accident; or

(4) Committed any other moving violation which the attorney for the State believes warrants criminal prosecution; or

B. Had failed to comply with the duty to submit to take a blood or breath test within the 6 years immediately preceding the operation which resulted in the prosecution for operating under the influence or with a blood-alcohol level of 0.10% or more.

The discretion of the attorney for the State under this subsection shall not be subject to review.

blood-alcohol level are initially commenced as criminal charges, to which attach all of the procedural and substantive rights, constitutionally or otherwise based, applicable to criminal prosecutions generally. *See State v. Chubbuck,* 449 A.2d 347, 350 (Me. 1982). *See also* L.D. 1541 (110th Legis. 1981). *But see Chubbuck,* 449 A.2d at 351 n. 10. Subsection 1 authorizes the attorney for the State to elect to charge a defendant who has been arrested or summonsed for a violation of section 1312–B with a traffic infraction. Under the statute, the prosecutor's election is subject only to the limitation imposed upon that discretion by section 1312–C(5).[9] The statute expressly declares that the prosecutor's determination and discretion "shall not be subject to review" nor shall the circumstances set forth in subsections 5 and 7 become elements of the offense requiring "proof or disproof." *Chubbuck,* 449 A.2d at 350.

■ The defendant in the present case was arrested and charged with a criminal violation pursuant to section 1312–B. It is undisputed that the attorney for the State did not thereafter elect to charge a traffic infraction. The defendant argues on appeal that "to impose the criminal sanctions on him when there is no difference between the criminal and civil violations, is a violation of the Equal Protection and Due Process Clauses of the United States and State of Maine Constitutions." In short, the defendant contends that the duplicative statutes are facially unconstitutional and requests that the judgment of conviction be reversed.[10]

The defendant premises his equal protection argument upon four relatively recent state court decisions which suggest that separate statutes may not penalize differently for the same conduct. *See People v. Mumaugh,* Colo., 644 P.2d 299 (1982); *State v. Modica,* 58 Hawaii 249, 567 P.2d 420 (1977); *State v. Wilson,* 60 Ohio App.2d 377, 397 N.E.2d 1206 (1978), *aff'd,* 58 Ohio St.2d 52, 388 N.E.2d 745 (1979); *State v. Jessup,* 31 Wash.App. 304, 641 P.2d 1185 (1982). The defendant concludes from these cases that "if the crime with more severe penalties is to be applied, then that statute must include an additional element which must be proved by the State in order to differentiate it from the statute with a lesser penalty." In short, it is argued that any duplicative statute is unconstitutional. The inherent weakness in defendant's position and the authority upon which he relies is that it fails to consider the United States Supreme Court decision in *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). In that case, it was held that duplicative statutes containing overlapping definitions of particular criminal conduct but providing different penalties for that conduct do not necessarily offend constitutional guarantees.

■ In *Batchelder,* the Court employed the following analytical framework for an examination of duplicative statutes: 1) whether the statutes violated due process for lack of notice and vagueness; 2) whether the existence of the duplicative statutes

---

**9.** Subsection 7 of 29 M.R.S.A. § 1312–C specifies a non-inclusive list of circumstances under which *criminal* prosecution may be indicated.

**10.** It should be noted that the present case is readily distinguishable from other instances in which this Court has been called upon to consider duplicative or overlapping criminal statutes. For example, in *State v. Anderson,* 409 A.2d 1290 (Me.1979) and *State v. Bryce,* 243 A.2d 726 (Me.1968), the Court reconciled the overlapping statutes at issue, utilizing the concept of repeal by implication. The defendant in this case does not argue that one of the two statutory provisions must prevail over the other as a matter of construction or that one must

be deemed to have repealed the other by implication. In this instance, the overall legislative design is patently clear, both from the language of the statute and the statement of fact which accompanied L.D. 1541 (1981) when the bill was first introduced in the 110th Legislature. The legislature expressly intended that identical conduct constitute both a criminal offense and a civil infraction and further intended to provide the prosecution with the authority to elect between the charges. Under these circumstances we have no occasion to resort to statutory construction but rather we must address the constitutional issues.

implicated due process and equal protection interest in avoiding excessive prosecutorial discretion and in obtaining equal justice; and 3) whether such prosecutorial discretion amounts to an impermissible delegation of legislative authority. We find that same framework to be useful in analyzing the constitutional issues presented in this case.

### A) *Notice—Due Process*

In *Batchelder,* the Supreme Court maintained that "vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute." *Id.* at 123, 99 S.Ct. at 2204.[11] After reviewing the statutes therein contested, the Supreme Court found that those provisions "unambiguously [specified] the activity proscribed and the penalties available upon conviction." *Id.* The Court further noted:

> That this particular conduct may violate both Titles does not detract from the notice afforded by each. Although the statutes create uncertainty as to which crime may be charged and therefore what penalties may be imposed, they do so to no greater extent than would a single statute authorizing various alternative punishments. · So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied.

*Id.*

 In the present case, defendant does not and could not argue that the notice

requirements of the Due Process Clause are not satisfied. The conduct prohibited and the punishment authorized under both section 1312–B and section 1312–C are clearly and unambiguously set forth.

### B) *Prosecutorial Discretion—Equal Protection*

 The argument advanced most forcefully by the defendant focuses upon the unusual discretion which is granted to the prosecution by the election procedure of section 1312–C. Although the civil and criminal provisions prohibit identical conduct, the prosecutor is given the authority to select those persons to be prosecuted civilly. It is entirely possible that of two persons similarly situated, one might be prosecuted criminally while the other was prosecuted civilly. Such a result has in the past evoked strong criticism. *See, e.g., Berra v. United States,* 351 U.S. 131, 140, 76 S.Ct. 685, 691, 100 L.Ed. 1013 (1956) (Black, J., dissenting).

In *Batchelder,* however, the United States Supreme Court undercut substantially, if not completely, defendant's argument. The Court specifically held that for purposes of constitutional doctrine, there is "no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements." *Batchelder,* 442 U.S. at 125, 99 S.Ct. at 2205.[12] Such a holding recognizes the critical role of

---

11. *Batchelder* involved two statutory provisions, both of which contained the same elements, prohibiting convicted felons from receiving firearms in interstate commerce. 18 U.S.C. §§ 922(h), 924(a); 18 U.S.C.App. § 1202(a) (1968). *Batchelder* was convicted pursuant to sections 922(h) and 924(a), which provided for penalties of not more than five years in prison or a $5,000 fine or both. Section 1202(a), however, set a maximum penalty of only two years in prison or a $10,000 fine or both. *Batchelder,* who was sentenced to five years under section 924(a), challenged the use of the harsher sentence as a violation of his right to equal protection and due process.

12. Although involving largely parallel facts, *Batchelder* is narrowly distinguishable from the present case. Here, the lesser charge is a civil violation, not an alternative criminal provision. Since the defendant in the present case was charged with the criminal offense, that distinction has no analytical significance in the present context. Additionally, the two statutory proscriptions in *Batchelder,* unlike those in the present case, are not fully coextensive. *See* 442 U.S. at 119, n. 5, 99 S.Ct. at 2201, n. 5.

prosecutorial discretion within our system of law in maintaining flexibility and sensitivity. *See State v. Heald,* 382 A.2d 290, 301 (Me.1978). That is not to say that such discretion is totally "unfettered." Selectivity in the enforcement of criminal laws *is* subject to constitutional constraints. The Equal Protection Clause prohibits selective enforcement "based upon an unjustifiable standard such as race, religion or other arbitrary classification." *Id. See Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.E.2d 446 (1962). The defendant, however, does not claim here on appeal that the prosecutor employed such impermissible factors in exercising his discretion.[13]

Although the holding of *Batchelder* was largely ignored by the courts in those decisions upon which the defendant relies, many state courts have had the occasion to apply its logic under fact situations analogous to that which we now confront. In *State v. Watts,* 601 S.W.2d 617 (Mo.1980), the defendant was charged with operating a motor vehicle with greater than 0.10% blood alcohol despite the existence of a separate statute proscribing operating while intoxicated, which mandated lesser penalties. The court rejected defendant's challenge, finding the constitutional issues resolved by *Batchelder.* In *State v. Karpinski,* 92 Wis.2d 599, 285 N.W.2d 729 (1979), the prosecutor, in his discretion, charged the defendant with a criminal violation when the same conduct could have been prosecuted as an ordinance violation in a civil action. The Wisconsin Supreme Court found that given the absence of any improper prosecutorial discrimination, such discretion is necessary, and not dissimilar from a prosecutorial determination of whether to prosecute at all. In *State v. Gerdes,* 252 N.W.2d 335 (S.D.

1977), the defendant was charged with being in control of a vehicle while there was 0.10 percent or more alcohol in his blood. A second statutory provision proscribed the same activity but placed a greater burden on the state. The South Dakota Supreme Court held that there was no violation of any constitutional guarantees given the very broad discretion necessarily extended to prosecutors. In *Crews v. State,* 366 So.2d 117 (Fla.Dist.Ct.App.), *cert. denied,* 376 So.2d 70 (Fla.1979), the defendant was charged pursuant to statute for carrying a concealed weapon despite the existence of a municipal ordinance proscribing the identical activity. The Florida District Court of Appeals upheld the prosecutor's exercise of discretion against constitutional attack, reasoning that such discretion is necessary and inherent in our system of law.

On two prior occasions, this Court has applied the rationale of *Batchelder,* although in situations distinguishable from the present case. In *State v. Jones,* 405 A.2d 149 (Me.1979), the defendant argued that it was improper for the State to bring an indictment for reckless conduct (17–A M.R.S.A. § 211) rather than an indictment for the less serious charges of reckless driving (29 M.R.S.A. § 1311) or driving to endanger (29 M.R.S.A. § 1314). The Court, citing *Batchelder,* noted that in the absence of allegations that the decision to prosecute was based upon an arbitrary classification, "[w]here the same criminal conduct or episode gives rise to more than one offense, the prosecution has discretion in deciding which offense to charge unless a 'contrary legislative intent plainly appears.'" *Id.* at 152 (citing 17–A M.R.S.A. § 13(1)). In *State v. Anderson,* 409 A.2d 1290 (Me.1979), we ruled that the felony-murder statute

---

**13.** The record reflects that, on a prior occasion, defendant failed to comply with the duty to submit to a blood or breath test. Pursuant to the guidelines set forth in section 1312–C(7)(B), such a circumstance suggests that criminal prosecution was appropriate.

At his pre-trial motion to dismiss, defendant introduced evidence that another person similarly situated to the defendant was charged civilly and not criminally. Assuming *arguendo*

that that person was not criminally prosecuted for similar conduct, defendant would still have to show that such selective enforcement was deliberately made on an impermissible and unjustifiable standard. *See Heald,* 382 A.2d at 301. *See also United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir.1974); *Mottram v. Murch,* 330 F.Supp. 51, 64 (D.Me.1971). Again, defendant has not attempted to argue discriminatory or selective enforcement on appeal.

(17–A M.R.S.A. § 202) did not repeal or constitute an exception to the accomplice statute (17–A M.R.S.A. § 57) when applied to the "intentional-knowing" murder statute (17–A M.R.S.A. § 201). Having determined that the statutes overlapped, we stated:

> Thus, when a single act violates more than one statute, the State may elect to proceed against the accused under either statute. . . . The discretion to choose under which to prosecute is vested in the prosecuting attorney and the grand jury, provided no impermissible invidious discrimination is involved.

*Id.* at 1306.

■ It is fair to conclude on the basis of *Batchelder* and our own decisions in *Anderson* and *Jones,* that in the case of duplicative or overlapping criminal statutes, both the state and federal guarantee of equal protection is limited to the defense of a *discriminatory* prosecution.

■ The present controversy is distinguishable from *Batchelder* in that the prohibited conduct under both section 1312–B and section 1312–C is coextensive and *identical.* Although not argued by the defense, commentators have suggested that *identical* statutes, as opposed to overlapping statutes, are distinguishable and should be found unconstitutional on the basis of "unfettered" prosecutorial discretion. *See, e.g.,* Comment, *Duplicative Statutes, Prosecutorial Discretion, and the Illinois Armed Violence Statute,* 71 Journal of Criminal Law of Criminology 226, 236 (1980). In the abstract, it could be argued that prosecutorial discretion is totally unguided and qualitatively different when choosing between statutes which are identical except for terms of punishment.[14] We are not prepared, however, to state as a matter of consti-

tutional doctrine, that such a grant of discretion is improper and that the *criminal* statute must be struck down as being facially unconstitutional.[15] As was stated in *Batchelder:*

> [A] decision to proceed under § 922(h) [the greater offense] does not empower the Government to predetermine ultimate criminal sanctions. Rather, it merely enables the sentencing judge to impose a longer prison sentence than § 1202(a) would permit and precludes him from imposing the greater fine authorized by § 1202(a). More importantly, there is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements. In the former situation, once he determines that the proof will support conviction under either statute, his decision is indistinguishable from the one he faces in the latter context. The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause. . . . Just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution, neither is he entitled to choose the penalty scheme under which he will be sentenced.

*Batchelder,* 442 U.S. at 125, 99 S.Ct. at 2205.

### C) *Improper Legislative Delegation*

■ Finally, we analyze the issue of prosecutorial discretion from the perspective of legislative delegation. It was argued in *Batchelder* that in promulgating

---

**14.** To the extent that prosecutorial discretion differs in degree when dealing with identical rather than overlapping statutes, we note the guidance afforded by subsections 5 and 7 of section 1312–C, which specify both mandatory and optional standards to assist the prosecutor in his election of either a criminal or civil charge.

**15.** In the present case we consider the statute only as it is applied to this particular defendant. We have no occasion to speculate on those issues which might be raised by a litigant charged with the civil infraction rather than the criminal offense.

the statutory provisions at issue, the legislature impermissibly delegated its responsibility to fix criminal penalties. In *Batchelder,* the Court flatly rejected this argument, finding that the provisions "plainly demarcate the range of penalties that prosecutors and judges may seek and impose. In light of that specificity, the power that Congress has delegated to those officials is no broader than the authority they routinely exercise in enforcing the criminal laws." *Batchelder,* 442 U.S. at 126, 99 S.Ct. at 2205. No further requirement of legislative guidance was imposed, nor were any guidelines, such as are set forth in section 1312–C, incorporated into the statutory scheme upheld in *Batchelder.*

As in *Batchelder,* the contested statutory provisions in this case plainly demarcate the range of penalties that prosecutors and judges may impose and therefore satisfy the constitutional requirement that there be "sufficient standards—specific or generalized, explicit or implicit" to prevent the arbitrary and irresponsible exercise of power by those entrusted with it. *See Superintending School Committee of the City of Bangor v. Bangor Education Association,* 433 A.2d 383, 387 (Me.1981).

 We note, once again, that the present case is distinguishable from *Batchelder* in that the competing statutory provisions here are identical rather than merely overlapping. To the extent that such a distinction retains meaning after *Batchelder,* we find that the mandatory and optional guidelines specified in subsections 5 and 7 supply sufficient standards to comply with the requirements of due process in the context of an analysis of the delegation of legislative authority.

Defendant's constitutional challenge to his conviction fails.

The entry must be:

Judgment of conviction affirmed.

GODFREY, ROBERTS, CARTER and VIOLETTE, JJ., concurring.

ROBERTS and CARTER, Justices, concurring.

We agree with the result reached by the Court. We do not join in Part IV of the Court's opinion because we believe its reliance upon the United States Supreme Court's decision in *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979) is misplaced. The statute under which the defendant was convicted does not provide disparate criminal penalties for the same conduct. Rather, the statute purports to authorize alternatively either criminal *or civil* sanctions for the same conduct. 29 M.R.S.A. §§ 1312–B, 1312–C (Supp.1982–1983).

No constitutional limitation prevents the Legislature from imposing both a criminal and a civil sanction for the same conduct. *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938). Indeed the sanctions may even be cumulative rather than alternative. *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 548–49, 63 S.Ct. 379, 386–87, 87 L.Ed. 443 (1943). We need not express any opinion as to whether the Legislature has validly established a civil sanction. *See Helvering,* 303 U.S. at 399–404, 58 S.Ct. at 633–636. The existence of an invalid civil sanction could hardly avail this defendant who was properly prosecuted upon a criminal complaint with no indication of any prosecutorial election of the civil alternative. *See State v. Chubbuck,* 449 A.2d 347, 349–52 (Me.1982); *see generally State v. Crocker,* 435 A.2d 58, 77–85 (Me.1981) (Carter, J., concurring) (criticizing majority for overbroad treatment of constitutional issue). Finally, there is no suggestion in this record of any improper prosecutorial conduct in declining civil prosecution.

NICHOLS, Justice, dissenting.

When Maine's operating-under-the-influence statute was revised two years ago a radical innovation was the option given to every prosecutor, in his or her unfettered discretion, to treat certain violations of this law as civil offenses rather than as criminal

offenses. 29 M.R.S.A. § 1312 (Supp.1982–1983). Confronted on this Defendant's appeal with a challenge to the law's constitutionality, today's majority mount their defense to the duplicative aspects of this statute on the decision of the United States Supreme Court in *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). That case upheld overlapping, but not duplicative, statutes on possession of a firearm by a felon.

*Batchelder* is inapposite. The majority's reliance is misplaced.

It is unfortunate, I suggest, that they did not instead follow the line of cases led by *State v. Pirkey,* 203 Or. 697, 281 P.2d 698 (1955). This case struck down duplicative statutes on drawing bank checks with insufficient funds in the bank.

One commentator has observed:

In spite of *Batchelder,* identical statutes are unconstitutional. No case has ever upheld statutes which are totally identical except for punishment.[1]

The decision by today's majority appears to represent the first instance in which a court has held otherwise. We are starting down a lonely road.

Section 1312–B and section 1312–C of our operating-under-the influence statute proscribe identical conduct in identical terms. The sections differ only with respect to punishment. The criminal offense is a Class D crime which carries a minimum jail sentence of 48 hours, a minimum fine of $350 and a ninety-day license suspension. 29 M.R.S.A. § 1312–B(2) (Supp.1982–1983). By contrast, the traffic infraction carries no jail term, imposing only a $250–$500 fine and a forty-five day license suspension. 29 M.R.S.A. § 1312–C(3) & (4) (Supp.1982–

1983). In all but a narrow range of cases where criminal prosecution is mandatory, the decision as to whether a defendant gains a criminal record, goes to jail and receives a stiffer fine and license suspension, or whether, treated merely as a civil violator, he receives a lesser fine and a shorter suspension, is one which rests ultimately with the prosecutor.

This statutory scheme violates the constitutional guarantees of both the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment.[2]

*Batchelder* did not involve identical statutes. The two federal statutes there at issue overlapped only to the degree of prohibiting some of the same conduct. In the case before us, on the other hand, there is a total redundancy in terms of both the substance of the offense and the language employed in the two sections. It is impossible for a motorist to violate section 1312–B without also violating section 1312–C, and it is impossible for a motorist to violate section 1312–C without also violating section 1312–B.

A second point of distinction is that the penalties under the two federal statutes challenged in *Batchelder* were roughly the same. The first statute provided a greater maximum prison sentence than the second, while the second authorized a greater maximum fine than the first.[3] Moreover, there was a very real possibility that a defendant would end up with the same penalty regardless of the statute under which he was charged. In contrast, in our operating-under-the-influence statute, there is a great disparity between the penalty for the traffic infraction and the penalty for the criminal offense. Stiffer fines, longer license

---

1. Comment, *Duplicative Statutes, Prosecutorial Discretion, and the Illinois Armed Violence Statute,* 71 Journal of Criminal Law and Criminology 226, 236 (1980).

2. *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938), relied upon in the concurring opinion, was a case in which double jeopardy was the only question raised. The case has no relevance to the equal protec-

tion and the due process issues which are paramount here.

3. Violators of 18 U.S.C. § 922(h) are subject to a maximum prison term of five years and maximum fine of $5,000; violators of 18 U.S.C.App. § 1202(a) are subject to a maximum two-year term and a maximum fine of $10,000. *See Batchelder,* 442 U.S. at 118–19, 99 S.Ct. at 2201–02.

suspensions and mandatory prison terms ride in the balance. There is *no* possibility of equivalent punishment.

Third, *Batchelder* involved two criminal statutes. A conviction under either would result in a criminal record. Here, Section 1312–C is nothing more than a traffic infraction, while a conviction under section 1312–B brands the defendant as a criminal. In addition to the greatly increased penalties obtaining under section 1312–B, a defendant convicted thereunder cannot escape the opprobium of criminality.

Thus, *Batchelder* is factually and legally distinguishable from the case before us. Those courts which have heretofore dealt with this question have uniformly adhered to the principle that, consistent with equal protection guarantees, a state may not employ identical statutes with different penalties to disparately punish those who commit identical acts. *See People v. Mumaugh,* 644 P.2d 299, 301 (Colo.1982); *People v. Marcy,* 628 P.2d 69, 74–75 (Colo.1981); *State v. Modica,* 58 Hawaii 249, 251, 567 P.2d 420, 422 (1977); *State v. Wilson,* 60 Ohio App.2d 377, 380–81, 397 N.E.2d 1206, 1209 (1978), *aff'd* 58 Ohio St. 52, 388 N.E.2d 745 (1979). *Spillers v. State,* 84 Nev. 23, 436 P.2d 18, 23 (Nev.1968); *State v. Pirkey,* 203 Or. at 704, 281 P.2d at 702; *State v. Jessup,* 31 Wash. App. 304, 307–08, 641 P.2d 1185, 1188 (1982).

The Colorado Supreme Court has articulated the guarantee of equal protection in this way:

> Equal protection of the law is a guarantee of like treatment of all those who are similarly situated. Classification of persons under the criminal law must be under legislation that is reasonable and not arbitrary. There must be substantial differences having a reasonable relationship to the persons involved and the public purpose to be achieved.

*People v. Marcy,* 628 P.2d at 74 (quoting *People v. Calvaresi,* 188 Colo. 277, 281–82, 534 P.2d 316, 318 (1975)).

The Maine statute by its terms permits unequal punishment for those who commit the same act. The conduct of two citizens, both convicted of operating-under-the-influence, may be identical in all respects. Although there may be no rational justification for treating these citizens differently, the statute authorizes for one, jail, and for the other, merely a fine. Such patently unequal treatment of identically situated persons violates the guarantee of equal protection of the law afforded all citizens by the United States Constitution.

There is still another constitutional infirmity in the manner in which the decision of whether to prosecute a given defendant civilly or criminally is delegated to the prosecutor. In Justice Cardozo's historic phrase, this approaches the level of "delegation running riot." *Schechter Poultry Corp. v. United States,* 295 U.S. 495, 553, 55 S.Ct. 837, 853, 79 L.Ed. 1570 (1935) (concurring opinion). Such delegation is also a violation of the separation of powers doctrine. *State v. Pirkey,* 203 Or. at 706–07, 281 P.2d at 703.

Although the Legislature has provided prosecutors with a list of "circumstances" which may be considered in deciding whether to prosecute a defendant criminally, it is made clear that these are no more than advisory in nature. 29 M.R.S.A. § 1312–C(7) (Supp.1982–1983). Such "circumstances" have little meaning when the consideration of them is entirely within the prerogative of the prosecutor. Furthermore, because criminal prosecution is permitted "in any other circumstances," the enumerated circumstances have little real significance as prosecutorial guidelines. Moreover, the statute concludes with the provision that: "The discretion of the attorney for the State under this subsection shall not be subject to review." Even if the decision to proceed under one section or the other should be made for clearly impermissible reasons, the prosecutor's decision is purportedly insulated from judicial review. The prosecutor's caprice is substituted for the adjudicatory process. *Berra v. United States,* 351 U.S. 131, 140, 76 S.Ct. 685, 691,

100 L.Ed. 1013 (1956) (Black, J., dissenting).[4]

To provide a prosecutor with such sweeping discretionary powers and to then preclude any judicial review of the exercise of that discretion sets the stage for possible abuse. For example, as the Supreme Court has observed, it "furnishes a convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials against particular groups deemed to merit their displeasure.'" *Kolender v. Lawson*, —— U.S. ——, ——, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (quoting *Papachristou v. City of Jacksonville*, 405 U.S. 156, 170, 92 S.Ct. 839, 847–48, 31 L.Ed.2d 110 (1972) and *Thornhill v. Alabama*, 310 U.S. 88, 97–98, 60 S.Ct. 736, 741–42, 84 L.Ed. 1093 (1940)). Standardless and unreviewable discretion invites arbitrary and discriminatory enforcement of the law. It violates the basic notions of fundamental fairness and even-handed justice which in our system underlie the constitutional guarantees of due process and equal protection.

When a motorist of ordinary intelligence cannot foresee whether conduct which the Maine statute proscribes may amount to a criminal offense or be only a traffic infraction, this statutory scheme may suffer the further infirmity of vagueness, which amounts to a denial of due process of law. A defendant is constitutionally protected against being "required at the peril of life, liberty or property to speculate as to the meaning of penal statutes." *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939) (statute penalizing "gangsters").

It is not enough that the prohibitions of the statute be set forth in plain language understandable by the average person;[5] this guarantee applies as much to the penalty provisions of a statute. *Commonwealth v. Gagnon*, 387 Mass. 567, ——, 441 N.E.2d 753, 755 (1982) (statute prohibiting distribution of heroin held unconstitutionally vague in that its penalty clause comprehended two inconsistent penalty schemes). *See generally* Note, *The Void-for-Vagueness Doctrine in the Supreme Court*, 109 U.Pa.L.Rev. 67 (1960).

I conclude, then, that the duplicative features of Maine's operating-under-the-influence statute do not pass constitutional muster. These sections, as we have seen, proscribe identical conduct in identical terms but prescribe for the defendant convicted of the criminal offense penalties substantially higher than the penalties prescribed for the defendant found guilty of a mere traffic violation. The choice between these sections is left to the whim of a prosecutor. Such a statutory pattern, I submit, not only offends the constitutional doctrine of separation of powers[6] but also violates both the Equal Protection and Due Process Clauses of the Fourteenth Amendment.[7]

Therefore, I would see no recourse but to vacate the judgment of the court below.

---

4. With the elements of the civil and criminal offenses identical, in some circumstances the prosecutor may deny a defendant a jury trial by opting to go the route of the traffic infraction.

5. *Cf. People v. Alfaro*, 144 Cal.App.3d 683, 192 Cal.Rptr. 178 (Cal.Ct.App. June 2, 1983) (striking down the 0.10% blood alcohol standard of a remarkably similar California statute as unconstitutionally vague).

6. Implicit in the federal constitution, the doctrine of separation of powers is explicitly set forth in our state constitution. Me. Const. art. III, §§ 1–2.

7. For a thoughtful comment canvassing the constitutional problems inherent in this statute and concluding that the duplicative aspects must be eliminated to safeguard the constitutional rights of defendants, see Comment, *Constitutional Issues Raised by the Civil-Criminal Dichotomy of the Maine OUI Law*, 35 Me.L. Rev. 385 (1983).