STATE of Utah, Plaintiff and Respondent,

v.

Toni T. VIGIL, Defendant and Appellant.

No. 880095–CA.

Court of Appeals of Utah.

April 19, 1989.

Kerry P. Eagan, Salt Lake City, for defendant and appellant.

Virginia L. Christensen, Salt Lake City, for plaintiff and respondent.

Before DAVIDSON, GARFF and JACKSON, JJ.

OPINION

DAVIDSON, Judge:

Toni T. Vigil was convicted of driving under the influence, a class B misdemeanor, in violation of Utah Code Ann. § 41–6–44 (1988). The issue Vigil raises on appeal is whether adequate foundation was established to demonstrate the accuracy and reliability of the intoxilyzer machine used to obtain her breath test. We affirm the trial court's finding that the state met its foundational requirements and that the test results were properly admitted into evidence.

On October 3, 1987, highway patrol trooper David Poplemeyer was patrolling in the area of 3500 South and 3200 West when he observed a small yellow car swerving back and forth across the white lane marker. Poplemeyer followed the car and watched the manner in which it was driven. Suspecting that the driver was impaired, Poplemeyer stopped the car.

Poplemeyer identified Vigil as the driver of the car. At his request, Vigil performed several field sobriety tests. Poplemeyer then arrested Vigil for driving under the influence, whereupon, she agreed to take a breath test. Poplemeyer escorted her to the South Salt Lake City Police Department offices where he administered the breath test using an intoxilyzer machine. The test results indicated a .10% blood alcohol concentration.

At trial, Poplemeyer testified that Vigil did not have anything to eat or drink for at least fifteen minutes prior to the test. He also testified that he followed proper test procedures. Poplemeyer testified that the intoxilyzer machine appeared to function normally and that he received a printout of the test results. Vigil stipulated that Poplemeyer was a qualified intoxilyzer operator.

Kerry Joe Zdunich, an intoxilyzer technician for the Utah Highway Patrol, was accepted as an expert witness by the court. Zdunich testified that he checked the intoxilyzer machine in question on September 30, 1987, three days prior to Vigil's test, and that the machine was working properly on that date. On October 13, 1987, ten days

after Vigil's test, Zdunich received a complaint that the intoxilyzer was not working. Upon examination, he found that the power light on the machine would come on, but further operation of the intoxilyzer was impossible. Therefore, he did not conduct any calibration tests and removed the machine in order to make repairs. He determined that a corroded power connector, between the main power input and the power supply board, interrupted the power supply. After making repairs, he tested the machine and it performed properly.

 Over Vigil's objection of lack of foundation, the trial court admitted the intoxilyzer test results into evidence. On appeal, Vigil claims the trial court erred in its conclusion that a proper foundation for admission of the breath test was shown. She argues that the trial court could not presume the machine was operating properly on October 3, unless the state demonstrated that the machine was operating properly both before and after October 3. This is referred to as "bookending."

This court recently rejected the need for "bookending" as a foundational requirement for admission of breath test results. In *Triplett v. Schwendiman*, 754 P.2d 87, 89 (Utah App.1988), we noted that "bookending" was redundant and expensive. Furthermore, Utah Code Ann. § 41–6–44.3 (1988) sets forth the requirements for admissibility of breath test results. Section 41–6–44.3 directs the commissioner of the Department of Public Safety to establish standards for the administration and interpretation of breath tests. Those standards are set forth in Utah Admin. R. 735–500–3 (1987) which states that a breath testing instrument must be checked for proper calibration on "a routine basis, not to exceed forty (40) days." As long as these requirements are met, the test is presumed valid. *Triplett*, 754 P.2d at 88–89. *See also Murray City v. Hall*, 663 P.2d 1314, 1320 (Utah 1983).

In the instant case, Zdunich testified that he followed an established routine for checking the intoxilyzer machine in question. His routine varied according to the frequency the machine was used, but in any case, he checked it at least every forty days. Furthermore, Zdunich testified that he checked the South Salt Lake machine three days prior to Vigil's test and found it working properly. This evidence is sufficient to raise the presumption that the intoxilyzer machine was working properly on the day of Vigil's test for purposes of establishing a proper foundation for admission of the test results. Vigil argues that since the machine malfunctioned sometime later, this presumption cannot be made.

Vigil's interpretation of the foundational requirements is incorrect. Once the state satisfies the requirements, as outlined by statute and administrative rule, the test is presumed valid and is admissible. *Layton City v. Watson*, 733 P.2d 499, 500 (Utah 1987); *Triplett*, 754 P.2d at 88–89. To rebut the presumption, Vigil must show that the malfunction actually affected her test results. Otherwise, any question about the accuracy of the intoxilyzer goes to the weight given the test by the trier of fact. *Triplett*, 754 P.2d at 88 n. 1 (quoting *State v. Palomino*, 37 Or.App. 309, 587 P.2d 107, 109 (1978) (once the state has laid the foundation for admission, the accuracy of the intoxilyzer is a question of fact)).

The fact that the intoxilyzer machine malfunctioned after the test was administered on October 3 is not sufficient to show that the defendant was affected in a prejudicial manner. *See State v. Powers*, 690 S.W.2d 859, 861 (Mo.Ct.App.1985). To hold otherwise would broaden the foundational requirements contrary to legislative intent. *Palomino*, 587 P.2d at 109.

 At trial, Zdunich testified that in his opinion the corroded connector would have shut the machine off completely rather than permit a faulty test. He also concluded that since Poplemeyer followed the proper test procedures, observed all the proper readings on the machine and received a printout, the machine must have been operating properly when Vigil was tested. On the other hand, Vigil offered no

independent evidence to show how the malfunction affected her test results.

Accordingly, we must conclude the presumption of the validity of the test was not rebutted and, therefore, the judge did not err by admitting the test results into evidence. We affirm defendant's conviction.

GARFF and JACKSON, JJ., concur.